## Richmond

NORFOLK AND WESTERN RAILWAY COMPANY V. JOSEPH B. JOHNSON.

April 24, 1967.

Record No. 6379.

Present, All the Justices.

*Thomas R. McNamara (Lawson Warrell, Jr.; Williams, Cocke, Worrell & Kelly*, on brief), for the plaintiff in error.

*Henry E. Howell, Jr. (W. Cullen MacDonald; Howell, Anninos & Daugherty, on brief), for the defendant in error.*

I'ANSON, J., delivered the opinion of the court.

Joseph B. Johnson instituted this action against the Norfolk and Western Railway Company (Railroad) to recover damages for personal injuries sustained when a hose used to transmit steam from a generator to passenger trains burst. The trial court sustained plaintiff's motion to strike Railroad's evidence, instructed the jury that Railroad was negligent as a matter of law, and submitted the case to the jury on the quantum of damages only. The jury returned a verdict for plaintiff in the amount of $60,000, and Railroad is here on a writ of error to a final judgment entered on the verdict.

The Railroad entered into a contract with B. F. Parrott & Company, Inc. (Parrott), for the construction of a new passenger terminal at Lambert's Point in Norfolk, Virginia. E. K. Wilson & Sons, Inc. (Wilson), was the subcontractor responsible for plumbing and heating, including the installation of a boiler. Norport Supply Company, Inc. (Norport), plaintiff's employer, was the subcontractor for the insulation of the permanent boiler being installed by Wilson.

The terminal was to be a two-story building with offices, and passenger and baggage facilities. On the west side of the building was to be a boiler room which would share a common wall with the terminal but which would have no connecting door. The boiler room was to house a boiler which would furnish steam through underground pipes to different locations along the tracks for the purpose of heating passenger cars standing at the station.

The contract date for completion of the new station was November 15, 1962. However, when it became apparent that completion would be delayed, the Railroad set December 26, 1962, as the date to begin operations at the new terminal. By December 26 the Railroad occupied the offices, waiting room and ticket facilities. The underground pipe running from the boiler room to points along the tracks was in place but the boiler had not been installed. Before the Railroad moved to its new terminal, it directed Parrott to supply steam on a temporary basis so that operations at the new location could begin on December 26..Parrott requested Wilson to provide the steam, and Wilson engaged E. T. Gresham Company, Inc. (Gresham), to furnish a portable steam generator and two operators.

When the portable steam generator was put into operation, a hose extended from the generator, which was located just outside the boiler room, through a door on the south side of the boiler room and across the floor in an "S" shape to the permanent underground pipeline. Railroad personnel notified the steam generator operators when trains would be in the station. The trainmen would then connect hose from outlets of the underground system along the tracks to cars and open the valves to supply steam to heat the cars.

Plaintiff testified that on January 3, 1963, he was working in the boiler room at the new station. While he was insulating the newly installed boiler, the hose from the portable steam generator to the underground system burst and scalded him.

Sometime before plaintiff was injured a similar hose had burst while transmitting steam from the portable generator to the underground pipeline, damaging the boiler room door which was repaired by Parrott. A Gresham employee replaced the damaged hose with the one which subsequently burst and injured plaintiff.

The hose which burst and caused injury to plaintiff had a "Butterworth Systems, Inc." label. Harry W. Keeling, Jr., an engineer and naval architect, testified that the Butterworth hose was capable of carrying water heated to a temperature of 180 degrees and was designed for the purpose of cleaning fuel or cargo tanks on tankers and barges. It has an inner tube of neoprene, which is covered by two layers of rayon braid, with small wire strands between the layers to reduce static electricity. The outer layer is also neoprene with carbon black on it. He said that neoprene is never used for a steam hose because it softens and comes apart at 300-325 degrees. A steam hose has an inner tube of natural rubber or teflon. In lieu of the rayon braid there is wire mesh to prevent the hose from bursting. However he said a Butterworth hose and a steam hose look alike, and it would be difficult for an untrained person to tell them apart by visual inspection.

Walter Young, resident vice-president of the Railroad, testified that uncontrolled steam is very dangerous. He defined "uncontrolled" steam as that which is allowed to escape or is transmitted in a container not designed for the pressure it is carrying.

It is undisputed that plaintiff's injuries resulted from the negligent use of an improper hose. Hence the first question for our determination is whether the persons furnishing and operating the steam generator were servants of the Railroad.

In determining whether a master-servant relationship exists, the crucial question is whether the Railroad had the right to control not merely results but the progress and details of the work. *Wells* v. *Whitaker*, 207 Va. 616, 624-625, 151 S. E. 2d 422, 429-430 (1966); *Coker* v. *Gunter*, 191 Va. 747, 756, 63 S. E. 2d 15, 17 (1951); *Epperson* v. *DeJarnette*, 164 Va. 482, 486-487, 180 S. E. 412, 413-414 (1935).

Plaintiff says that because the train personnel notified the steam generator operators when trains could be expected in the station in order to get the steam necessary for heating the cars, the operators of the steam generator were the servants of the Railroad. We do not agree with this contention.

In *Coker* v. *Gunter*, *supra*, Justice Buchanan cited *Standard Oil Co.* v. *Anderson*, 212 U.S. 215, 29 S. Ct. 252, 53 L. ed. 480, where the Supreme Court said that under the circumstances of that case the giving of signals by the stevedore to the winchman was not the giving of orders but of information, and the winchman's obedience to those signals showed cooperation rather than subordination. 191 Va. at 753, 63 S. E. 2d at 17.

Here, as in *Standard Oil*, we find from the evidence that notification to the generator operators of when the trains would be in the station constituted the giving of information, not orders, and did not amount to control or the right to control the manner or method of providing the steam. The relationship between the railroad personnel and the generator operators was one of cooperation rather than subordination. Consequently the generator operators were not the servants of the Railroad.

Having concluded that a master-servant relationship did not exist between the Railroad and the Gresham employees, we now turn to the question whether the railroad is liable in its status as the employer of an independent contractor.

The general rule in Virginia, as elsewhere, is that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *E.g.*, *Smith, Adm'r* v. *Grenadier*, 203 Va. 740, 747, 127 S. E. 2d 107, 112 (1962); *Bibb's Adm'r* v. *N. & W. R. R. Co.*, 87 Va. 711, 14 S. E. 163 (1891); 2 Restatement (Second) Torts § 409 (1965). There are exceptions to the general rule with respect to work which is unlawful, a nuisance, inherently dangerous, or will in the natural course of events produce injury unless special precautions are taken.

*Ritter Corporation* v. *Rose*, 200 Va. 736, 107 S. E. 2d 479 (1959); *Bowers* v. *Martinsville*, 156 Va. 497, 159 S. E. 196 (1931); *Richmond* v. *Sitterding*, 101 Va. 354, 359, 43 S. E. 562, 563, 65 L.R.A. 445 (1903).

In *Bibb's Adm'r* v. *N. & W. R. R. Co., supra*, we held that the railroad was not liable for the death of an employee of an independent contractor who was engaged to replace an old bridge with a new one without interrupting traffic. When a train approached the bridge, one of the contractor's employees signalled that it might proceed; and when it did so, the bridge collapsed, killing plaintiff's decedent. Recovery was denied because "the work was not inherently dangerous and neither it nor the results of its building were nuisances in themselves." The court rejected the argument that inasmuch as injury might result from careless execution of the work, the railroad was personally bound to see that precautions were taken to prevent it. It was expressly held that this duty was imposed only where injury was consequent upon doing the work in the ordinary mode. 87 Va. at 737, 14 S. E. at 172. See also, *Norfolk, &c. Ry. Co.* v. *Stevens*, 97 Va. 631, 34 S. E. 525, 46 L.R.A. 367 (1899).

In *Emmerson* v. *Fay*, 94 Va. 60, 26 S. E. 386 (1896), the property owner was held not liable to a plaintiff who was injured as a result of the negligence of an employee of the independent contractor who allowed an iron ball to fall from the roof of a lumber dry kiln being erected on a lot adjoining the street along which she was walking. There it was said that the construction of a building seven feet from the street line was not wrong per se, or a nuisance, nor would it necessarily injure anyone. 94 Va. at 65, 26 S. E. at 388.

In *Richmond* v. *Sitterding, supra*, Sitterding, who had engaged an independent contractor to build some houses, was held not liable for injuries sustained by a plaintiff who fell over a plank negligently extended across the sidewalk by laborers of the independent contractor. This court said that the erection of buildings adjacent to a street was neither inherently dangerous nor did it necessarily create a nuisance. 101 Va. at 360, 43 S. E. at 564.

*Stagg* v. *Taylor's Adm'x*, 119 Va. 266, 89 S. E. 237 (1916), held the employer not responsible for the death of plaintiff's decedent resulting from negligence of a subcontractor in removing a support from a concrete roof while it was still green.

In *Epperson* v. *DeJarnette, supra*, 164 Va. at 489-490, 180 S. E. at 415, the employer engaged an independent contractor to saw timber and provided him with a sawmill. During the course of the sawing

operations, sparks from the sawmill started a fire which extended to the plaintiff's land. This court denied recovery because the work was neither inherently hazardous nor did it create a nuisance in the normal course of its operation.

The first significant departure from the general rule of nonliability of an employer of an independent contractor was the English case of *Bower* v. *Peate*, 1 Q. B. D. 321 (1876), which held that an employer was liable for damage resulting from the negligence of his independent contractor engaged to perform work "from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise unless means are adopted by which such consequences may be prevented * * *."

It seems clear that in the cases heretofore cited in which liability of the employer was denied, this court had not accepted an exception to the general rule as broad as that stated in *Bower* v. *Peate*. For example, in *Richmond* v. *Sitterding*, *supra*, the court said that an established exception to the general rule included an activity "inherently and necessarily dangerous, or where danger and hazard must necessarily accompany the work, or where the work will necessarily create a nuisance * * *" 101 Va. at 359, 43 S. E. at 563.

In *Bowers* v. *Martinsville*, *supra*, 156 Va. at 515, 159 S. E. at 202, the court, without citing *Bower* v. *Peate*, *supra*, held the employer liable with respect to work by an independent contractor under a contract which included making excavations in the bank of a canal for bridge abutments. There it was said that the excavations would necessarily weaken the canal bank, with the consequent danger of its breaking under the pressure of water in the canal, unless proper precautions were taken to prevent it. The employer was held responsible for the negligent failure of the independent contractor to take such precautions.

Plaintiff strongly relies on the recent case of *Ritter Corporation* v. *Rose, supra.* Ritter Corporation was the general contractor for the State Highway Department to extend a highway across a right of way and tracks of the Seaboard Air Line Railroad. C. H. Lawson, Inc., was a subcontractor of Ritter responsible for the grading work on the project. Ritter procured a license from Railroad to construct the road across the tracks, and agreed that it would exercise due care to avoid injuries and would notify Railroad when heavy equipment would be moved across the tracks. Plaintiff was injured when a train in which he was riding collided with an earth mover operated by an employee

of subcontractor Lawson. No notice had been given to Railroad that heavy equipment would be moved across the track.

On appeal from an adverse judgment, Ritter argued that the earth moving machine was being operated by Lawson, an independent contractor, and therefore it should not be liable for the negligence of the independent contractor's employee. We rejected Ritter's argument and affirmed the judgment against it.

In *Ritter*, Justice Spratley referred to the *Bower* v. *Peate* exception to the General rule, and Restatement, Torts § 416 (1934), which reads as follows:

> "One who employs an independent contractor to do work which the employer should recognize as necessarily[1] requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions." See also, Restatement (Second) Agency § 214, and comment (c) (1958).

After quoting § 416 of the first Restatement, he said:

> "[O]ne who engages an independent contractor to do work of an inherently hazardous character, or to use a dangerous instrument, from either of which in the natural course of things, it is likely that injurious consequences to others may arise, unless all reasonable precautions be taken to the end that third persons may be protected against injury, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of responsibility, if the independent contractor fails to exercise due care with respect to the performance of the work or the use of the dangerous instrumentality * * *." 200 Va. at 742, 107 S. E. 2d at 483.

The activity performed by the subcontractor Lawson was the repeated movement of heavy construction equipment across the railroad tracks, which created a danger of collision between the construction equipment and trains unless the train personnel were notified when equipment would be on the tracks.

Plaintiff does not here rely on a theory of absolute liability for an ultrahazardous activity, but he contends that the work would in the the natural course of things cause injury unless special precautions

(1) The new Restatement substituted "likely to create" for "necessarily requiring the creation." Restatement (Second) Torts § 416 (1965).

were taken. It is true that the exception in *Ritter* is not limited to activities which are ultra hazardous in the sense that they create danger which cannot be eliminated even with the utmost due care.[2] Prosser, Torts 485-486, and n. 46 (3d ed. 1964), citing *Ritter;* 2 Harper & James, Torts § 26.11, p. 1408 (1956). Compare, 23 A. L. R. 1084 (inherently dangerous work) with 23 A. L. R. 1016 (work which will in natural course of events produce injury unless certain precautions are taken.)

*Ritter* does not mean, however, that an employer is liable for every activity which will cause injury unless carefully done. *Smith, Adm'r v. Grenadier, supra,* 203 Va. at 748, 127 S. E. 2d at 113; *Tropea v. Shell Oil Company,* 307 F. 2d 757, 771 (2d Cir. 1962). Indeed, nearly all activities could result in injury when carelessly done. 2 Harper & James, *supra,* at 1409, n. 56. The distinction to be made is between work which is of such character that, if properly done, no injurious consequences can arise, and work which is of such character that injury to others is likely unless precautionary measures are adopted. *Bower v. Peate, supra,* at 326, 327; 57 C. J. S., Master and Servant § 590(a), p. 361; Annot., 23 A. L. R. 1016, 1028 (1923); Annot., 33 A. L. R. 2d 7, 49 (1954).

In terms of whether the work involved the creation of a peculiar risk which called for special precautions, we find the present case distinguishable from *Ritter, supra,* and *Bowers v. Martinsville, supra,* in which the employers were held responsible for the negligence of their independent contractor. In *Ritter* the repeated movement of construction equipment across the tracks created an obstacle as to which the train crews would be unaware unless the construction personnel made the appropriate notification. Thus in that case the special precaution was not merely the careful movement of the equipment, but the additional act of warning that the equipment would be on the tracks.

In *Bowers v. Martinsville, supra,* the peculiar risk was the likelihood that the canal banks would be weakened by the excavation. The special precaution required was not excavating in a particular manner, but the necessity to shore the banks of the canal. Similarly, in *Bower v. Peate, supra,* the special precaution was the shoring of plaintiff's soil and walls during excavation.

Admittedly, "uncontrolled" steam is dangerous, but the transmis-

(2) In *Wells v. Whitaker,* 207 Va. 616, 627, 151 S. E. 2d 422, 431 (1966), it was unnecessary to determine whether the activity there created a risk for which the employer of an independent contractor would be liable.

sion of steam in its normal and ordinary mode does not, in the natural course of things, create a condition involving a peculiar risk of bodily harm unless special precautions are taken. The injury here resulted from the use of an improper hose by the persons engaged to perform the work. We do not consider the use of a proper hose a special precaution comparable to shoring canal banks or notifying a train crew of obstructions on the tracks. Rather, the use of a proper hose was one of the ordinary precautions that the Railroad had a right to expect would be taken. The Railroad here had no reason to know that the steam would be transmitted through a hose not designed for that purpose, and the injury resulted from negligence in the manner of doing the work and not from the nature of the work itself. *Cf.*, *Tropea v. Shell Oil Company, supra*, 307 F. 2d at 772; *Breece* v. *J. T. Chapman & Son, Inc.*, 302 F. 2d 581, 584-585 (3d Cir. 1962).

For the reasons stated, we are of opinion that the exception to the general rule, imposing liability on an employer of an independent contractor for the physical injuries caused by the negligence of the contractor or his servants, is not applicable here. Hence the judgment of the court below is reversed and final judgment for the Railroad is here entered.

*Reversed and final judgment.*