# LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Daniel E. Spry, III

     v.

Orlando Orifice, etc.

November 26, 1968

Case No. 437

## By JUDGE A. CHRISTIAN COMPTON

Attached you will find a copy of the order entered today sustaining the defendant's plea of release.

This is an action in tort seeking recovery of compensatory and punitive damages arising out of: (1) an alleged trespass, asportation and wilful detention of the plaintiff's automobile; and (2) arising out of the alleged wilful and negligent act of running the vehicle over the plaintiff's foot resulting in bodily injuries to him. This cause of action arises out of the repossession of the motor vehicle by the defendant who was acting at the request of the Bank of Virginia, the lienor.

Because the plaintiff was delinquent in three monthly payments, the Bank requested the defendant to "pick up the automobile for the bank" (transcript page 4) and to advise the plaintiff that the vehicle would be placed in storage "until the account could be straightened out."

The defendant is in the business of "collecting" and repossessing automobiles. His business is a sole proprietorship and he trades as Capital Auto Recovery. He formerly worked for another bank but left it to go into business for himself (T. 34). He rents for his business purposes a lot separate and apart from premises of the bank whereon he maintains an office using his own supplies and stationery. He establishes his own hours, has one employee, bills the Bank (which is one of his clients) at the end of the month on a "case basis," maintains his own set of motor vehicle keys used to start the vehicles being repossessed, and, in making the repossessions uses a method of operation which he has developed over a period of fourteen years in this business.

As a result of the request from the Bank, the defendant went to the plaintiff's residence and shortly after midnight on November 28, 1967, located the vehicle, affixed a "repossessed dealer" tag furnished to him by the bank on the vehicle, started the motor, and began to move the vehicle away from its location near the plaintiff's home at which time the plaintiff discovered that his car was being moved and came out of his home. Thereafter a criminal warrant was sworn out by the plaintiff charging the defendant with reckless driving and the plaintiff claims he sustained bodily injuries during the course of the events following his discovery that his car was being moved away and during the repossession.

The vehicle was then taken to the defendant's lot and stored. The bank then notified the plaintiff and his father (the endorser of the note) that "satisfactory arrangements" must be made on the account before the car would be returned to the plaintiff. The loan was renegotiated, but the bank had knowledge of the warrant issued against the defendant and of the claimed injury to the plaintiff; therefore as one of the conditions to allowing the plaintiff to regain possession of the vehicle, the bank required the plaintiff to sign the release in question, the pertinent portions of which provide as follows:

> For value received, the undersigned hereby releases The Bank of Virginia from any and all liability for injury to the undersigned or damage to or loss of property arising from the repossession . . . of a 1966 Pontiac . . . or in any way connected therewith . . . .

One week prior to the day the release was executed, the plaintiff had gone to the defendant's place of business as directed by the bank's employee, Alford, to pick up his car. Upon the plaintiff's arrival, the defendant called one of Alford's superiors at the bank who instructed the defendant not to turn over the car to the plaintiff without obtaining a release (T. 46, 55). Thereupon the defendant presented a release running either to the bank and the defendant (T. 56) or the bank alone (T. 48), which the plaintiff refused to sign.

Thereafter the release in question which was prepared under the direction of the bank's attorney was executed and the car was returned to the plaintiff. The plaintiff signed the release because, he said, he wanted his car back and the bank would not authorize its return until the release was signed.

The defendant maintains that he was the agent of the bank and therefore the release of his principal operates to discharge him. Such argument is not supported by the facts in this case. As the defendant testified, he was in business for himself. He used methods which he developed on his own. He was in the business of repossessing vehicles and not the banking business. He established his own hours, used his own equipment, used his own stationery, and paid his own social security and withholding taxes. The bank did not control or have the right to control the methods or details of doing the work. It looked to the defendant only for results. Under these circumstances the defendant was an independent contractor and not an agent. Wells v. Whitaker, 207 Va. 616, 627 (1966); 9 M.J., Independent Contractors, Sections 3-10; Restatement of Agency 2d, Section 220(2), pp. 485 and 486.

Next the defendant contends that even if the defendant was an independent contractor nevertheless the bank was vicariously liable for his torts, therefore the release of the bank releases him. The defendant seeks to support its theory of vicarious liability on two grounds. First, since the repossession involved a trespass, the bank is liable, for one may not with immunity hire an independent contractor to commit a trespass. Second, since a repossession of a motor vehicle involves a substantial risk of personal injury, the bank is liable for the foreseeable torts committed by the defendant independent contractor.

This idea of vicarious liability is not fully supported in this case. In the first place, the evidence upon the plea fails to show that a trespass was "commanded" or directed by the Bank and at this stage of the proceeding the burden is on the defendant to prove this. The plaintiff was delinquent in his payments and under paragraph 7 of the Security Agreement (defendant's exhibit 2) and the Uniform Commercial Code (Section 8.9-503) the bank had the right to take possession of the collateral. A trespass being an "unauthorized invasion of one's interest in personal property," none was committed here under this evidence. 18 M.J., Trespass, Section 2, p. 547. This determination would, of course, require a dismissal of Count I of the motion for judgment if these are the facts upon a full development of the evidence. On the other hand, if the evidence was sufficient to show that the bank authorized the defendant to commit a trespass, the law seems clear that it is liable for the acts of the independent contractor in carrying out these instructions and Count I would have to be stricken upon this plea. 21 A.L.R. 1229, 1261. All of the authorities cited by the defendant, except the statement in the text of the annotation referred to above, deal with trespass to real property. Loughan v. Harger-Haldeman, 7 Cal. Rptr. 581, 585 (1960), involved a trespass to the premises of the plaintiff as did the case therein relied on of Yee Chuck v. Board, 3 Cal. Rptr. 825, 829 (1960); Section 427 B of the Restatement of Torts 2d, p. 419, speaks of "a trespass upon the

land of another"; and Weinman v. DePalma, 232 U.S. 571 (1914), deals with trespass to land. The rule would seem to be the same though regarding chattels, the unlawful act of trespass being a trespass regardless of its object.

In the second place, under the facts of this case the act of repossession of a motor vehicle does not fall under the category of work which is "unlawful, a nuisance, inherently dangerous, or will in the natural course of events produce injury unless special precautions are taken," so as to make the bank vicariously liable for the defendant's acts. N. & W. Railway v. Johnson, 207 Va. 980, 983 (1967). Under the existing law and the Security Agreement, the bank was involved in taking possession of a chattel which it was authorized to do without judicial process if this could "be done without breach of the peace." Code, Section 8.9-503. This was the activity that the bank contracted with the defendant to engage in. The defendant testified that "on occasions" he would "run into problems" during a repossession but "not real often" (T. 42). The defendant stated that "now and then" he ran "into a little difficulty" with "people who don't like their car repossessed." Certainly the evidence fails to support a conclusion that the business is not ordinarily and customarily done in a peaceful manner. The activity performed by the defendant here when done in its normal and ordinary way, under the evidence in this case, does not, in the natural course of events, "create a condition involving a peculiar risk of bodily harm unless special precautions are taken." 207 Va. 988. The alleged injury here resulted from the alleged improper performance of the work to be done. If a breach of the peace was imminent during the progress of the repossession, then the defendant should have ceased attempting the recovery and the bank could have then resorted to the judicial process provided by the Code. The bank had no reason to expect the defendant to breach the peace or do bodily harm to the plaintiff and therefore the alleged injury resulted not from the nature of the work itself but from the way the work was done. Restatement of Torts 2d, Sections 416 and 427.

The third ground relied on by the defendant states that because the plaintiff has treated the bank as a potential tortfeasor and given it a release, the plaintiff may not defeat the plea of release raised by another involved in the same occurrence by alleging that the bank was not in fact negligent and therefore was not a joint tortfeasor. This position is well taken. Harris v. City of Roanoke, 179 Va. 1, 5 (1942). See also Shortt v. Hudson Supply etc., 191 Va. 306, 310. Having settled with the bank, the plaintiff is estopped to deny that he had no claim against it. It is immaterial whether the bank and the defendant were technically joint tortfeasors. "If he accepts the satisfaction voluntarily made by one, that is a bar to all . . . and this rule is held to apply even though the one released was not in fact liable. It does not lie in the mouth of such a plaintiff to say he had no cause of action against one who paid him for his injuries, for the law presumes that the one who paid committed the trespass and occasioned the whole injury." 1 Cooley on Torts, 4th ed., Section 83, pp. 264, 265. See also Prosser on Torts, 3rd Ed., Section 45, p. 268; 1 C.J.S. Accord and Satisfaction, Section 12, p. 482; 148 A.L.R. 1270, 1292; 124 A.L.R. 1298, 1315; 104 A.L.R. 846, 861; 66 A.L.R. 206, 214; and 50 A.L.R. 1057, 1093. Cf. Katzenberger v. Bryan, 206 Va. 78, 83 (1965).

Contrary to the argument of the plaintiff, the evidence clearly shows that the release was supported by consideration (if indeed such was necessary since the rule invoked in this case is based in part on equitable estoppel by representations or conduct). The release states that it was given for "value received." The bank was aware of the pending damage claim arising out of the repossession and specifically made the execution of a release a condition precedent to releasing the car to the plaintiff which, under the evidence he was anxious to regain.

In view of what has been set out above, the plea of release is sustained, the motion for judgment is dismissed, and judgment is entered for the defendant.