Daniel R. BIEGER, Administrator, etc., Plaintiff,

v.

CONSOLIDATION COAL CO., Defendant and Third-Party Plaintiff,

v.

COWIN AND CO., INC., Third-Party Defendant.

Civ. A. No. 84–0188–A.

United States District Court, W.D. Virginia, Abingdon Division.

Dec. 2, 1986.

Robert T. Copeland, Abingdon, Va., for plaintiff.

W. B. Wilcox, Salt Lake City, Utah, W. Wade Massie, Abingdon, Va., C. Adrian White, Bristol, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on defendant's motion for summary judgment as to both the plaintiff and the third-party defendant. Jurisdiction is based on diversity of citizenship and arises out of a freak accident that occurred when plaintiff's decedent, Horn, was employed by and working for the third-party defendant, Cowin and Company, Inc. ("Cowin"). At that time Cowin was constructing a ventilation shaft for defendant Consolidation Coal Company ("Consol") in Buchanan County, Virginia. A 40–pound plumb bob accidentally fell the length of the 1400–foot shaft and struck and killed Horn. Plaintiff seeks damages for the alleged wrongful death of Horn.[1]

Consol was developing a mine and had contracted with Cowin to construct three shafts including a ventilation shaft that was the site of the underlying accident. On January 5, 1983 some of Cowin's employees had returned to the bottom of the shaft after surfacing for a meal. A sliding door at the top of the shaft blocked its entrance, but the door was not closed tightly leaving a six-inch gap between the door and the wall of the shaft. A drill basket[2] was above the sliding door attached to an apparatus used to transport men and materials from the mouth of the shaft to its bottom. A plumb bob, which is not ordinarily carried in a drill basket, was in the drill basket. A hoist operator was guiding the drill basket to the center of the door to lower it. At the time of the accident, however, the drill basket caught on the door.

---

1. Workmen's Compensation precludes plaintiff from seeking additional recovery from Cowin.

2. A drill basket is a container measuring four feet by four feet with a two inch rim in which various pieces of equipment are conveyed.

The operator lost control; and, consequently, the basket struck a guard rail causing the plumb bob to fall out of the basket and through the crack to the bottom of the shaft where it struck and killed Mr. Horn.

After the accident a state inspector directed Cowin to raise the retaining edge on the drill basket to six inches to comply with the requirements of Va.Code § 45.1–69(q). No evidence exists, however, that prior to the accident any incident involving the basket had occurred. Union, state, and federal inspectors had visited the project numerous times; and no one had ever questioned the design of the basket.

Plaintiff alleges that Consol formulated and implemented safety programs and procedures and that, consequently, Consol knew or should have known of the hazardous conditions and routines that resulted in Horn's death. However, the court finds that the evidence demonstrates neither Consol's responsibility for nor provision of safety services. The relationship between Consol and Cowin is clearly that of owner and independent contractor. Not only does the contract define the relationship as such; but Consol provided plans and specifications for the project whereas Cowin furnished all the labor, material, and equipment and was responsible for daily decisionmaking. The only right that Consol reserved is the right to inspect the shaft to ascertain whether the work satisfies contract requirements. Furthermore, Cowin agreed to indemnify Consol for any damages or injuries arising from its work. Additionally, no evidence indicates that Consol's plans and specifications for the shaft are defective or that any of Consol's employees were present or involved at the time of the accident.

The threshold question before the court is whether Consol was guilty of any negligence that proximately caused Horn's death. Absent such liability Consol's third-party claim against Cowin is moot.

A landowner's duty to persons on his property varies with the status of those persons.[3] An invitee is a person who enters another's land by invitation in connection with the landowner's business for the benefit of the landowner or for the mutual benefit of the landowner and the invitee. A licensee is a person who enters another's land with permission but who goes on the land for his own purpose rather than for the benefit of the landowner.

 A landowner owes a greater duty to an invitee than to a licensee because an invitee enters a landowner's premises at the request and for the benefit of the landowner. Under Virginia law this duty to an invitee is "to exercise reasonable care to make the premises safe ... [and] to warn of hidden dangers or defects in the premises but only to the extent that he has knowledge thereof or should, in the exercise of reasonable care, have such knowledge." *Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167, 169 (4th Cir.1966). *See also Vandergrift v. United States*, 500 F.Supp. 229, 233 (E.D.Va.1978). The landowner must inspect his property and subsequently either repair or warn of hidden dangers and defects of which the owner knows or should know but of which the invitee does not and could not reasonably know. *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 66 S.E.2d 441 (1951). *See also Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167 (4th Cir.1966), and *Hogge v. United States*, 354 F.Supp. 429 (E.D.Va.1972). Two logical limitations mitigate a landowner's duty to an invitee: a time limitation and an opportunity limitation. First a landowner is not liable until a danger or defect has existed "for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it." *Vandergrift v. United States*, 500 F.Supp. 229, 234 (E.D.Va.1978). *See also Hogge v. United States*, 354 F.Supp. 429 (E.D.Va. 1972), and *Miracle Mart, Inc. v. Webb*, 205 Va. 449, 137 S.E.2d 887 (1964). Further-

---

**3.** The three classifications of persons upon another's land are invitee, licensee, and trespasser. Horn was clearly not a trespasser; consequent-ly, this court will limit its discussion to the definition of and duty owed to an invitee as opposed to a licensee.

more, a landowner has no duty to warn "unless its knowledge or opportunity for knowledge of the danger was superior" to the invitee's. *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 781, 66 S.E.2d 441, 446 (1951).

■ Applying this standard of care to the instant facts clearly relieves Consol of any responsibility to either remedy or warn of the situation involving the plumb bob. The testimony indicates that Consol was not involved in the shaft construction beyond preparation of the plans and subsequent inspection of the work site for quality and progress. Consol did not know of the circumstances resulting in Horn's death; and insufficient time precludes imputing constructive knowledge to Consol. Furthermore, Horn had superior opportunity and knowledge; Cowin and its employees were considerably more familiar with the drill basket and the equipment related thereto than was Consol. Consol could not have possibly foreseen the unusual chain of events that led to Mr. Horn's death: that the door would not close; that the drill basket would catch on the door; that the operator would be unable to control the basket; that the drill basket would contain the plumb bob; that the drill basket would strike the guard rail and trip over causing the plumb bob to fall down the shaft; and that Mr. Horn would be standing in the center of the shaft. Consequently, Consol breached no duty to an invitee.

■ The lesser duty to a licensee involves no duty to inspect; rather it requires a landowner to warn of any known dangerous condition that he realizes the licensee neither recognizes nor will discover. However, the court need not apply this standard to the instant facts because Consol clearly is not liable under the greater standard of care owed to an invitee.

■ Some question exists as to whether Horn qualifies as an invitee or a licensee. Even though this distinction is irrelevant due to Consol's nonliability under the more stringent invitee standard, the court will address the difference between the two classifications. At first blush Horn resembles an invitee; an independent contractor and his employees are generally invitees. *Kalopodes v. Fed. Reserve Bank*, 367 F.2d 47 (4th Cir.1966). *See also Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 66 S.E.2d 441 (1951). However, two exceptions reduce Horn's status to licensee. *Norfolk & Western Ry. Co.* enunciates the first exception: "The general rule in Virginia, as elsewhere, is that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Norfolk & Western Ry. Co. v. Johnson*, 207 Va. 980, 983, 154 S.E.2d 134, 137 (1967), *cert. denied*, 389 U.S. 995, 88 S.Ct. 498, 19 L.Ed.2d 491 (1967). Even more pertinent is the principle that *Dillingham v. Smith-Douglass Co.* sets forth: Where the contractor has charge of the work methods and equipment in use, then contractors' employees do not rise any higher in status than licensees of the owner. *Dillingham v. Smith-Douglass Co.*, 261 F.2d 267 (4th Cir.1958). Clearly Horn's status is licensee.

■ Plaintiff argues that the doctrine set forth in *Ritter Corp. v. Rose*, 200 Va. 736, 107 S.E.2d 479 (1959), applies to the instant case:

It is well settled in Virginia and elsewhere that one who engages an independent contractor to do work of an inherently hazardous character, or to use a dangerous instrument, from either of which, in a natural course of things, it is likely that injurious consequences to others may arise, unless all reasonable precautions be taken to the end that third persons may be protected against injury, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of responsibility, if the independent contractor fails to exercise due care with respect to the performance of the work or the use of the dangerous instrumentality.

*Ritter Corp. v. Rose*, 200 Va. 736, 742, 107 S.E.2d 479, 483 (1959). In *Ritter* a general contractor had agreed to build a railroad

crossover for the state highway department. The general contractor procured a license from the railroad to construct and maintain the crossover upon railroad property and tracks. The general contractor subcontracted its work to another company. A passenger train subsequently collided with the subcontractor's earthmover; and an employee of the train was seriously injured. The general contractor contended that it was not liable because it had delegated its duty to the subcontractor. However, the court held that this duty is non-delegable due to the "inherently hazardous character" of the work. *Ritter Corp. v. Rose*, 200 Va. 736, 742, 107 S.E.2d 479, 483 (1959). The Virginia Supreme Court later delineated the boundaries of the *Ritter* exception in *Norfolk & Western Ry. v. Johnson:*

> *Ritter* does not mean, however, that an employer is liable for every activity which will cause injury unless carefully done.... Indeed, nearly all activities could result in injury when carelessly done.... The distinction to be made is between work which is of such character that, if properly done, no injurious consequences can arise, and work which is of such character that injury to others is likely unless precautionary measures are adopted.

*Norfolk & Western Ry. v. Johnson*, 207 Va. 980, 987, 154 S.E.2d 134, 139 (1967), *cert. denied*, 389 U.S. 995, 88 S.Ct. 498, 19 L.Ed.2d 491 (1967). The *Ritter* exception providing for liability for injuries resulting from hazardous activity does not apply to the instant case. The injury was not the result of the hazardous nature of the work. If the work had been executed properly, no injurious consequences would have arisen.

Consequently, the court is of the opinion that no factual issue of negligence exists for submission to the jury. Accordingly, summary judgment will be granted to Consol; and the third-party complaint is rendered moot.

In accordance with this Memorandum Opinion, an Order will be entered granting summary judgment to Consolidation Coal Company, dismissing the third-party complaint, and striking this case from the docket.