846 F.2d 69
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel R. BIEGER, Administrator of the Estate of Odis Horn,
Plaintiff- Appellant,
v.
CONSOLIDATION COAL COMPANY, Defendant-Appellee,
v.
COWIN & COMPANY, INC., Mining Engineers and Contractors,
Third Party-Defendant.
 No. 86-2671.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1988.
Decided April 27, 1988.
Rehearing and Rehearing In Banc Denied Dec. 21, 1988.
 
 W. Brent Wilcox (Giauque, Williams, Wilcox & Bendinger, Robert T Copeland, Copeland, Molinary & Bieger on brief) for appellants.
 Wade W. Massie (Penn, Stuart, Eskridge & Jones on brief) for appellee.
 Before ERVIN and WILKINS, Circuit Judges and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is a wrongful death action brought by Daniel Bieger, administrator of the estate of Odis Horn, who was killed on January 5, 1983, in the ventilation shaft at the Buchanan No. 1 Mine in Buchanan County, Virginia. Consolidation Coal Company, ("Consol") owned the mining property where Mr. Horn was working on the day of the accident. Mr. Horn was employed by Cowin & Company Mining Engineers and Contractors, with whom Consol had contracted for the construction of the ventilation shaft. After Mr. Horn's death, Bieger filed this suit on behalf of Horn's widow and three children. After preliminary discovery, Consol moved for a summary judgment. The district court granted Consol's motion, ruling as a matter of law that Consol was not negligent. Our review of this case reveals no such clarity; in fact, we find that there exist genuine disputes of material fact that render the grant of summary judgment improper. Accordingly, we reverse.
 
 I.
 
 2
 Odis Horn died instantly when a "plumb bob" used to center mine shafts fell from the surface of the shaft where he was working and struck him on the head. The accident occurred on January 5, 1983, at approximately 7:00 a.m. when the ventilation shaft was about 1403 feet deep. The work crew was lowered into the shaft in a muck bucket, a large deep bucket regularly used to haul material and men. When the men reached the bottom of the shaft, they unhooked the bucket and the hook was raised to the surface.
 
 
 3
 When the hook reached the top, the men on the surface closed the door that covered the shaft and placed the hook on the drill basket, a four-foot by four foot device containing drills, hoses, and fixtures, which sat on the door when not in use. The basket was to be lowered to the crew so that the drilling could begin. A plumb bob was in the drill basket on this occasion.
 
 
 4
 Normally the drill basket is lifted by the hoist, guided to the center of the door, and lowered into the shaft. At the time of the accident, the drill basket was situated on the door in such a way that when it was lifted, it caught on the door. When it broke free its swing could not be controlled and the basket struck a guardrail around the shaft and tipped. The plumb bob rolled out. The shaft doors had not been closed completely and the plumb bob fell through the opening and struck Mr. Horn.
 
 
 5
 Bieger argues that Consol formulated and implemented safety programs and procedures, and that as a result, Consol knew or should have known of the hazardous conditions that led to Horn's death. The district court ruled that Consol, as a matter of law, owed no duty to Horn, and that the injury suffered by Horn was unforeseeable. The court then granted summary judgment in favor of Consol. We reverse.
 
 II.
 
 6
 A grant of summary judgment is appropriate where no genuine dispute of material fact is presented to the factfinder. Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed.2d 265 (1986). To determine whether the grant of summary judgment is proper we ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 91 L.Ed.2d 202, 214 (1986).
 
 
 7
 In this case Bieger argues that Consol was negligent in that it violated the mining laws of Virginia, because the retaining edge around the drill basket was only 1.75 inches high. State law requires the edge to be at least six inches.[1] Bieger also maintains that the mine owner was negligent in providing for the safety of Cowin employees. The administrator argues that Consol did assume some safety obligations through its contractual right to inspection and that it negligently performed those obligations.[2] The district court ruled that Cowin, not Consol, violated the state mining laws; and, that Consol was not negligent because it owed no duty to Horn and because the accident was not foreseeable. Putting aside the question of whether Consol violated the state mining laws, we find that there are disputed material facts as to the safety obligations undertaken by Consol, and whether a failure of those obligations may have proximately caused Horn's death.
 
 
 8
 In support of his argument that Consol undertook at least some safety services, Bieger points out that Consol assigned a project manager, Joe Aman, and a project engineer, Glenn Smith, to the site. Aman had "total responsibility for design, construction and operation of the underground coal mine." JA 260. Both men were on the site daily and would descend the shafts one to three times per day. Aman testified that he understood that he and Smith were to see that Cowin complied with all federal and state mining laws, and to observe any safety hazards and to make sure they were remedied. JA 287-88.
 
 
 9
 In September of 1981, Fred Bray, a Consol safety engineer, visited the shaft site to observe the safety of Cowin. In March of 1982, Bob Peterson, another safety engineer of Consol, met with Federal Mine Safety and Health specialists to discuss hoisting accidents. In September of 1982, Consol management asked Aman to have Cowin crews spend some time in the mine checking for methane gas.
 
 
 10
 Aman also testified that had he known that the drill basket violated Virginia law, he would have required that it be brought into conformity. Finally, Aman agreed that Cowin need only have their safety man visit the site an average of three times per month rather than station someone there permanently.
 
 
 11
 Consol argues that it reserved a right of inspection to insure that the work was progressing in the mine; but never undertook to assure the safety of the mine workers. It responds that the inspectors it had at the site were investigating incidents wholly separate from the one resulting in the death of Odis Horn.
 
 
 12
 We believe that the behavior of Consol, in sending a project manager and engineer to supervise all aspects of the construction, and in sending various inspectors to the mine, and in requiring infrequent visits by Cowin's safety inspector, raises a material question of fact as to whether the mine owner undertook some safety obligation.
 
 
 13
 Turning now to the proximate cause issue, we again believe that a material question of fact arises. The district court labelled the incident a "freak accident" and said that Consol could not have "possibly foreseen the unusual chain of events that led to Mr. Horn's death." Bieger v. Consolidation Coal Company, 650 F.Supp. 1290, 1291, 1292 (W.D.Va.1986). Mr. Horn died because an implement fell from a basket being lowered into a mine shaft. The implement arguably rolled out of the basket because the retaining edge was far shorter than the minimum required by statute. Whether a six inch retaining edge would have prevented this tragedy is unknown. However, the mere existence of the height requirement for retaining edges is enough to alert mine owners and operators that accidents like this can occur. We believe that this accident was not so unforeseeable as to merit summary judgment in favor of the mine owner on the issue of the proximate cause.
 
 
 14
 Because genuine questions of material fact are presented by the administrator of Horn's estate, the grant of summary judgment in favor of Consol was inappropriate. The administrator has raised a sufficient question as to the liability of the mine owner to be able to argue his case before a factfinder.[3]
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 [1]
 Bieger argues that: 1) Consol violated Virginia Code Sec. 45.1-69(q):
 Any conveyance used to haul men or materials within a shaft or slope shall be designed to prevent materials from falling back into the shaft or slope and shall be equipped with at least a six-inch retaining edge to prevent objects from falling.
 and 2) that the duty created by this language is non-delegable under the auspices of Sec. 45.1-104(a):
 Nothing in chapters 1 to 14 (Secs. 45.1-1 to 45.1-161) of this title shall be so construed as to relieve the mine owner or operator from seeing that all of the provisions of chapters 1 to 14 of this title are strictly complied with, nor from the duty imposed at common law to secure the reasonable safety of their employees and, in the performance of those duties that are nonassignable at common law, as well as those duties required by Chapters 1 to 14 of this title, the mine foreman, assistants, or fire boss, shall be considered as acting for the mine owner or operator as a vice principal.
 The nature of any obligation on Consol created by these code sections should certainly be litigated fully on remand.
 
 
 [2]
 Bieger argues that Consol's duty of care in performing mine inspections arises under the common law of Virginia and the Restatement (Second) of Torts Sec. 324(A):
 Sec. 324 A. Liability to Third Person for Negligent Performance of Undertaking.
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 [3]
 On remand, the district court should first consider the effect of the Virginia Worker's Compensation Act, Code Sec. 65.1-1 et seq., on the merits of this dispute