# CIRCUIT COURT OF THE CITY OF NORFOLK

Kaneesha D. Cherry

v.

The Palace on
Plume Street,
Kenneth Bullock,
and The Palace, Inc.

March 17, 2015

Case No. (Civil) CL14-6642

BY JUDGE DAVID W. LANNETTI

Today the Court rules on Defendant The Palace, Inc.'s ("The Palace") Demurrer and Motion To Dismiss. The two issues before the Court on demurrer are (1) whether Plaintiff Kaneesha D. Cherry sufficiently pleaded a cause of action against The Palace for battery under the theory of *respondeat superior*[1] and (2) whether Cherry sufficiently pleaded a cause of action against The Palace for negligence. An accompanying Motion To Dismiss requests the Court dismiss the Complaint based on an alleged violation of Rule 1:4 of the Rules of the Supreme Court of Virginia. The Court finds that Cherry has not sufficiently pleaded either a master-servant relationship or an exception to the general prohibition that an employer is not liable for acts or negligence of an independent contractor to support a *respondeat superior* claim involving The Palace. The Court further finds that Cherry has not sufficiently pleaded that The Palace knew, or should have known, of a dangerous condition to support a negligence claim against The Palace. The Court therefore sustains the Demurrer on both grounds.

---

[1] Although The Palace's Demurrer is phrased in terms of *respondeat superior* and Cherry's Complaint alleges the more broad vicarious liability, the two concepts merge under the circumstances alleged in the Complaint.

The Court also finds The Palace failed to sufficiently articulate the basis for its Motion To Dismiss and, therefore, denies the Motion.

## Background

Cherry filed suit against several defendants alleging claims of assault, battery, and negligence arising out of an encounter that occurred on September 30, 2012, in The Palace on Plume Street in Norfolk, Virginia. (Compl. 2.) Cherry alleges a business owner-invitee relationship between The Palace and Cherry. (*Id*. at 6.) Cherry contends that "[The] Palace contracted with ... Elite for security services on its premises." (*Id*. at 4.) Cherry asserts that Defendant "John Doe" ("Doe") was employed by Defendant Elite Security Consultants, L.L.C. ("Elite") to "perform security duties within the [The Palace on Plume Street]" and that "Elite had the right to control the progress and details of ... Doe's work." (*Id*. at 4.) Cherry claims that the services provided by Elite "are inherently dangerous and are of such a character that injury to others is likely unless precautionary measures are adopted." (*Id*. at 4-5.)

Cherry alleges that Doe "committed an assault and battery" upon her and that she suffered injuries "as a direct and proximate result" of that "attack." (*Id*. at 2-3.) Cherry further alleges that "[i]n the minutes prior to the attack ... it became foreseeable that physical force was going to be necessary to maintain order in [The Palace on Plume Street]." (*Id*. at 6.) She argues that The Palace had a duty of care "to warn and/or protect [Cherry] against the danger of harm from reasonably foreseeable criminal acts committed by third persons" by virtue of the business owner and invitee relationship. (*Id*. at 6.)

Cherry asserts that The Palace is "vicariously liable for the acts of its contractor, Defendant Elite, and Defendant Elite's employee and agent ... Doe." (*Id*. at 5.)

Each defendant demurred to the Complaint. At the hearing on March 5, 2015, the Court entered an agreed-upon Order dismissing the claims against Defendants The Palace on Plume Street, Kenneth Bullock, and The Palace Restaurant and Lounge. The agreed-upon Order also dismissed Cherry's claim of assault. The sole issue now before the Court is whether there is merit to The Palace's Demurrer and Motion To Dismiss.

## Positions of the Parties

### A. The Palace's Demurrer and Motion To Dismiss

The Palace demurs to the Complaint on numerous bases. First, it asserts that Cherry "has not stated any allegations in her Complaint to support an assault was committed by [Doe] upon [Cherry] or that ... The Palace ... is in any way responsible." (Dem. and Mot. To Dismiss 2.) Next, The Palace contends that Cherry fails to state sufficient facts that The Palace is liable

for the tort of assault. (*Id.*) Third, The Palace argues that the Complaint fails to allege sufficient facts for a cause of action against it for battery based on a theory of *respondeat superior*. (*Id.* at 2-3.) Finally, The Palace contends that the Complaint fails to establish a cause of action against it for negligence. (*Id.* at 3.) The Palace also moves to dismiss the Complaint, stating that the "Complaint violates Rule 1:4 of the Rules of the Virginia Supreme Court." (*Id.*)

At oral argument, The Palace presented to the Court an additional case, not cited in its pleading, allegedly supporting its Demurrer to the negligence claim, *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 396 S.E.2d 649 (1990).

## B. *Cherry's Memorandum in Opposition*

Cherry asserts that the tort of assault is well pleaded. (Memo. in Opp'n 2-3.) She claims that vicarious liability is well pleaded for the torts of both assault and battery "pursuant to" *Norfolk & Western Ry. v. Johnson*, 207 Va. 980, 154 S.E.2d 134 (1967), and *Broaddus v. Standard Drug Co.*, 211 Va. 645, 649-50, 179 S.E.2d 497, 501 (1971). (*Id.* at 3.) Cherry does not state how the Complaint complies with these cases or how she drafted the Complaint "pursuant to" them. In response to the Demurrer to the *respondeat superior* claim, Cherry contends that a reasonable inference can be drawn that The Palace had the right to control Doe because he worked *within* the establishment. (*Id.* at 4 (emphasis added).) To bolster this argument, that Doe was controlled by The Palace, Cherry cites *Norfolk & Western Ry.*, (*Id.*); Cherry argues that one can reasonably infer from the Complaint that The Palace had the " 'right to control not merely the results but the progress and details of the work' within his own establishment," (*Id.* at 4 (citing *Norfolk & Western Ry.*, 207 Va. at 983, 154 S.E.2d at 136).).

Next, Cherry states that the negligence claim is well pleaded because the Complaint includes allegations of duty, breach, causation, and damages. (*Id.* at 4-5.)

With respect to the Motion To Dismiss, Cherry asserts that The Palace fails to articulate how she allegedly violated Rule 1:4 of the Rules of the Supreme Court of Virginia or any other basis for the relief requested; Cherry, therefore, asks the Court to deny the Motion To Dismiss. (*Id.* at 5.)

## *Analysis*

### A. *Legal Standard*

A demurrer tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). The only question for the Court to decide is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the Defendant. *Thompson v. Skate Am.,*

*Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). On demurrer, the Court must admit the truth of all material facts properly pleaded, facts that are impliedly alleged, and facts that may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Even if imperfect, a complaint drafted such that a defendant cannot mistake the true nature of the claim should withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). The Court will not consider any factual assertions outside the pleadings for purposes of a demurrer. *See* Va. Code Ann. § 8.01-273 (1950). If a court sustains a demurrer, it is within the court's discretion to allow leave to amend the Complaint, and such leave "shall be liberally granted in furtherance of the ends of justice." Va. Sup. Ct. R. 1:8.

Certain rules in the Rules of the Supreme Court of Virginia ("Rules") apply to all proceedings. *See* Va. Code Ann. § 8.01-3. Accordingly, "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Va. Sup. Ct. R. 1:4(d). Although "[a]n allegation of negligence ... is sufficient without specifying the particulars of the negligence," *id.* R. 3:18, a plaintiff still must allege facts sufficient to support each element of the claim. *Graves v. Mortg. Elec. Registration Sys.*, 2011 Va. Cir. lexis 97, at *14 (Va. Cir. June 29, 2011).

## B. *Discussion*

The Court has considered the pleadings, oral argument at the March 5, 2015, hearing, and applicable authority. The Court does not consider the Demurrer to the claim of assault against The Palace because the March 5, 2015, agreed-upon Order disposed of that claim. This Opinion therefore rules on the remaining three issues.

### 1. *Whether Cherry Sufficiently Pleaded a Cause of Action Against The Palace for Battery Based on Respondeat Superior*

It is undisputed that Doe was employed by Elite and that Elite, and not Doe, contracted with The Palace. Doe therefore was an independent contractor of The Palace. In such a situation, The Palace would be liable for the acts or negligence of Doe based on vicarious liability or *respondeat superior* only if The Palace and Doe had a master-servant relationship or there was an applicable exception to the general rule that an employer is not responsible for the acts or negligence of an independent contractor.

The Virginia Supreme Court discussed both of these liability theories in *Norfolk & Western Ry.* There, the Norfolk and Western Railway Co.

("Railway") contracted with a contractor to construct a new passenger terminal. *Norfolk & Western Ry.*, 207 Va. at 981, 154 S.E.2d at 135. The contractor had multiple subcontractors, one of which ("Subcontractor One") was responsible "for plumbing and heating, including the installation of a boiler" and another ("Subcontractor Two") that was responsible "for the insulation of the permanent boiler." *Id.* Subcontractor Two contracted with a sub-subcontractor ("Subcontractor Three") "to furnish a portable steam generator and two operators" for the boiler. *Id.* The plaintiff worked for Subcontractor Two and was injured when a hose furnished by Subcontractor Three burst. *Id.* at 982, 154 S.E.2d at 136. The plaintiff sued the Railway. *Id.*

The court first analyzed whether Subcontractor Three's employees were servants of the Railway. *Id.* The court stated that, for such a master-servant relationship to exist, the Railway would have to "have had the right to control not merely the results but the process and details of the work." *Id.* The court noted that the Railway's "giving of information, not orders … did not amount to control or the right to control" the employees of Subcontractor Three. *Id.* The court found that, given these circumstances, the relationship between Subcontractor Three's employees and the Railway was one of "cooperation rather than subordination," so no master-servant relationship existed. *Id.* at 983, 154 S.E.2d at 137.

The *Norfolk & Western Ry.* court then discussed whether the Railway could be held liable for the acts of Subcontractor Three's employees based on the Railway's status as an employer of an independent contractor. *Id.* The court stressed that the general rule in Virginia "is that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Id.* (internal citations omitted). This general rule has certain exceptions, however, "with respect to work which is unlawful, a nuisance, [or] inherently dangerous, or will in the natural course of events produce injury unless special precautions are taken." *Id.* The court held that the relationship between the Railway and Subcontractor Three did not fall within one of the exceptions, and the Railway, therefore, was not liable as an employer of Subcontractor Three. *Id.* at 988, 154 S.E.2d at 139.

As in *Norfolk & Western Ry.*, the Virginia Supreme Court also discussed the master-servant relationship and liability of an independent contractor employer in a situation more analogous to the one presented to this Court in *Broaddus v. Standard Drug Co.*, 211 Va. 645, 179 S.E.2d 497 (1971). In *Broaddus*, a drug company ("Company") contracted with a detective agency ("Agency") to hire security guards, and one of those guards shot the plaintiff. *Id.* at 649, 179 S.E.2d at 500. The plaintiff sued the Company. *Id.* at 646, 179 S.E.2d at 499.

The court first looked to whether a master-servant relationship existed. *Id.*, 179 S.E.2d at 501. The Company "had little contact with the guards,"

"no voice in their selection," and it was the Agency, not the Company, that "instructed [the guards] as to their duties," and the court, therefore, found that there was no master-servant relationship between the Company and the plaintiff. *Id.*

The court instead found that the security guards, who were "employed, discharged, paid, and controlled" by the Agency, were independent contractors of the Company, and the court focused its analysis on whether the Company was liable as the employer of an independent contractor. *Id.* at 650, 179 S.E.2d at 501. The court noted, as it had in *Norfolk & Western Ry.*, the general rule that an employer is not liable for the intentional acts or negligence of an independent contractor and pointed out that exceptions include instances where the work is "unlawful, a nuisance, inherently dangerous." *Id.* The court also held that "inherently dangerous" activities are "not limited to activities which are ultra hazardous in the sense that they create danger which cannot be eliminated even with the utmost due care"; rather, "an employer is liable for every activity which will cause injury *unless carefully done.*" *Id.* at 650, 179 S.E.2d at 501 (emphasis added). According to that court, "[t]he distinction to be made is between work which is of such character that, if properly done, no injurious consequences can arise, and work which is of such character that injury to others is likely unless precautionary measures are adopted." *Id.* Specifically, the court found that an exception was not satisfied because the security guard work "was not unlawful, it was not a nuisance, and it was not inherently dangerous *nor would it in the natural course of events produce injury unless special precautions were taken.*" *Id.* (emphasis added). The court further found that the Company "could not reasonably anticipate that, incident to such employment, one of the [security] guards might shoot a person attempting escape from a police officer." *Id.* The Company, therefore, was not held liable for the actions of one of its independent contractor security guards.

Similar to the determinations in *Norfolk & Western Ry.* and *Broaddus,* this Court finds that a cause of action cannot, and does not, exist against The Palace because Cherry has not sufficiently pleaded facts to establish liability under a theory of *respondeat superior.*

With respect to a master-servant relationship, Cherry apparently attempts to distinguish *Broaddus* by alleging that "[The] Palace contracted with ... Elite for security services *on its premises*" and that Doe "perform[ed] security duties *within* the [The Palace on Plume Street]." (Compl. 4 (emphasis added).) Although Cherry argues in her Memorandum in Opposition that "it can be reasonably inferred that [*The Palace*] had the 'right to control not merely the results but the progress and details of the work' within [its] own establishment," (Memo. in Opp'n 4 (emphasis added)), Cherry admits in her Complaint that "*Elite* had the right to control the progress and details of ... Doe's work." (Compl. 4 (emphasis added).) Based on Cherry's allegations in her Complaint and assuming they are true, as the Court must,

it was Elite that controlled the process and details of Doe's work, and The Palace's relationship with Doe is pleaded as one of cooperation and not subordination. The Court, therefore, finds that, based on the allegations in the Complaint, a master-servant relationship between The Palace and Doe did not exist.

With respect to liability of an employer for acts or negligence of an independent contractor, The Palace cannot be liable to Cherry simply by virtue of The Palace's status as an employer of an independent contractor. *Broaddus*, 211 Va. at 549, 179 S.E.2d at 501. As to the exceptions to the general rule excluding liability of an employer for independent contractor actions, Cherry does not allege that Doe's work was unlawful or a nuisance. Apparently mindful of *Norfolk & Western Ry.*, Cherry asserts that the services provided by Elite "are inherently dangerous and are of such a character that injury to others is likely unless precautionary measures are adopted." (Compl. 4-5.) In light of *Broaddus*, however, the Court finds that the work Doe performed — as alleged in the Complaint — was of such a character that, if properly done, would not result in injurious consequences; the work was *not* of such a character that injury to others was likely unless precautionary measures were adopted. Further, Cherry does not allege that The Palace could reasonably anticipate that one of its independent contractors would act as Doe allegedly acted toward Cherry. Thus, there is no basis upon which the Court can fairly and justly infer a set of facts that would state a viable cause of action against The Palace on this claim. The Court finds — based on the allegations in the Complaint — that an exception to the general rule that an employer is not liable for the acts or negligence of an independent contractor does not exist.

The Court sustains the Demurrer as to the vicarious liability count against The Palace.

*2. Whether Cherry Sufficiently Pleaded a Cause of Action against The Palace for Negligence*

Pursuant to Rule 3:18 of the Rules of the Virginia Supreme Court, "[a]n allegation of negligence ... is sufficient without specifying the particulars of the negligence." Va. Sup. Ct. R. 3:18. Notwithstanding this rule, Cherry claims she alleges duty, breach, causation, and injury in her Complaint. (Memo. in Opp'n 4-5.) Based on this contention, that "all [of the negligence] elements have been alleged," Cherry believes that her Complaint is sufficiently pleaded. (*Id.*) This Court does not agree. Although a plaintiff does not need to specify the "particulars of the negligence ... a plaintiff *must still allege facts sufficient to support each element.*" *Graves v. Mortg. Elec. Registration Sys.*, 2011 Va. Cir. lexis 97, at *14 (Va. Cir. June 29, 2011) (emphasis added).

Cherry bases her negligence claim on the existence of an alleged business-invitee relationship between Cherry and The Palace. (Compl. 6.)

Cherry claims that this relationship creates a duty on behalf of The Palace "to maintain the premises in a reasonably safe condition." (*Id.*) Cherry asserts that the "unruly patrons" put The Palace on notice that it had to "warn and/or protect [Cherry] from the acts of ... Doe," the alleged unsafe condition. (*Id.* at 6.) Even considering this allegation as true, as the Court must, Cherry does not sufficiently plead facts sufficient to constitute a cognizable negligence claim.

The *Winn-Dixie* case cited by Cherry at the March 5, 2015, hearing ultimately undermines her argument regarding the sufficiency of her negligence claim. In *Winn-Dixie*, the plaintiff allegedly slipped on a snap bean while in a Winn-Dixie grocery store. *Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 396 S.E.2d 649 (1990). The case discusses the duty of care of a business owner in a business-invitee relationship. *Id.* at 182, . 396 S.E.2d at 650. Specifically, a business is required to keep the premises in a reasonably safe condition and remove any unsafe conditions that are known, or should be known, to the business. *Id.* The trial court allowed the case to go to the jury, and the jury returned a verdict in the plaintiff's favor, which the court entered. *Id.* On appeal, the Virginia Supreme Court reversed the trial court, stating that the plaintiff "failed to make out a *prima facie* case" against Winn-Dixie because the plaintiff did not establish that Winn-Dixie put the bean on the floor or "that Winn-Dixie had either actual or constructive notice of the bean's presence and failed to remove it." *Id.* at 184, 396 S.E.2d at 651.

The snap bean in *Winn-Dixie* is analogous to the "unruly patrons" in the present case. Just as the plaintiff in *Winn-Dixie* failed to establish that Winn-Dixie knew of the snap bean, Cherry here has not alleged that The Palace knew of the "unruly patrons." A business owner must have knowledge, whether actual or constructive, of the unsafe condition in order to have a duty to remedy that condition or warn invitees of the condition. *See Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 781-83, 66 S.E.2d 441, 444-45 (1951). Although knowledge of an employee may be imputed to an employer business, knowledge of an independent contractor generally may not. *French v. Successors of Loyal Co.*, 32 Va. (5 Leigh) 627, 658 (1834). Unlike with an employee, knowledge of the independent contractor is not imputed to the employer because the principal-agent relationship is lacking. *See French v. Successors of Loyal Co.*, 32 Va. 627, 658 (1834) ("[O]n proof of notice to an agent, the law, at once, imputes notice to the principal; not because notice to the agent is proof that the principal actually had notice also, but because it is a fact of such a character that the principal ought to be as much bound by it as if he had notice."). Even assuming that Doe, as an agent of an independent contractor, knew of the "unruly patrons," that is not enough to impute knowledge to The Palace. If the issue before the Court instead was whether Elite, as Doe's principal, had knowledge, the analysis would be very different. As that issue is not presently before the

Court, this Court does not address it. Without the allegation of The Palace's knowledge, it would be a leap to conclude — based on the facts alleged — that a duty toward Cherry even existed for The Palace to breach. Cherry, therefore, has failed to present a *prima facie* case of negligence against The Palace because there are no alleged facts to suggest that The Palace had any knowledge of the alleged unsafe conditions and, without knowledge, there can be no duty to cure or inform invitees of the condition.

The Court sustains the Demurrer as to the negligence count against The Palace.

### 3. *Whether the Court Should Grant the Motion To Dismiss*

Rule 1:4 of the Rules of the Supreme Court of Virginia outlines the general provisions for all pleadings. Va. Sup. Ct. R. 1:4. Although The Palace alleges a violation of the rule generally, it fails to articulate with *any* specificity how the Complaint allegedly violates the Rule. With The Palace having failed to inform the Court regarding the specific basis or bases for the Motion To Dismiss, The Palace fails to plead a proper motion. *Id.*; *see also* Va. Code Ann. § 8.01-3. The Court therefore denies the Motion.

### Conclusion

The Court sustains The Palace's Demurrer as to the vicarious liability and negligence counts and denies The Palace's Motion To Dismiss. The Court, however, grants Cherry leave to file an Amended Complaint within twenty-one days.