JOANNE RICHMAN

V.

NATIONAL HEALTH LABORATORIES, INC., ET AL.

Record No. 850174

April 22, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Thomas, and Whiting, JJ.,
and Gordon, Retired Justice

*Brian P. Gettings (Harvey B. Cohen; Charles S. Russell, Jr.; Cohen, Gettings, Alper & Dunham*, on briefs), for appellant.

*John F. Gionfriddo; Joseph D. Roberts (Slenker, Brandt, Jennings & Johnston*, on briefs), for appellees.

THOMAS, J., delivered the opinion of the Court.

In this appeal, we decide whether a clinical laboratory, which provided erroneous test results to a physician, was a "Health care provider" under Code § 8.01-581.1 *et seq.*, the Virginia Medical Malpractice Act (the Act). Further, we decide whether the claims against the clinical laboratory were barred by the applicable statute of limitations and whether claims against a physician, who re-

ported the erroneous results to his patient, were the proper subject of summary judgment in favor of that physician.

On July 10, 1981, Joanne Richman visited Dr. Ward Vaughan's office in Winchester, Virginia. Dr. Vaughan practiced with Dr. Fraser Scorgie in a group known as OB/GYN SPE-CIALISTS, LTD. (hereinafter sometimes referred to collectively as the "Doctors"). Richman advised Dr. Vaughan that she was considering having a child and desired an examination including a "pap smear." The examination was conducted and the smear taken.

A slide of Richman's pap smear specimen was prepared in Dr. Vaughan's office, then sent to National Health Laboratories, Inc. (the "Lab"). On or about July 14, 1981, personnel at the Lab examined the specimen and reported to Dr. Vaughan that it was "benign negative," that is, free from cancer. Dr. Vaughan, in reliance upon the Lab's report, advised Richman, on July 14, 1981, that her test results were normal. Richman had no knowledge of or direct contact with the Lab. Dr. Vaughan billed her for the test, and she paid him directly.

In reliance upon the clean bill of health she had received from Dr. Vaughan, Richman became pregnant in late December 1981. By that time, she had moved to Maryland. There, she visited a physician who confirmed her pregnancy. That physician took another "pap smear" which, when analyzed, showed active cervical cancer.

Richman's Maryland physician contacted Dr. Vaughan about the discrepancy in the pap smear test results. Dr. Vaughan, in turn, contacted the Lab. The Lab reanalyzed Richman's original specimen, which had been kept on file. Upon this second analysis, the Lab determined that the original July 1981 pap smear also showed active cervical cancer and that the "benign negative" report had been erroneous.*

On July 11, 1983, Richman filed a Notice of Claim pursuant to Code § 8.01-581.2 in which she named the Lab, Dr. Vaughan, Dr. Scorgie, and OB/GYN SPECIALISTS, LTD., as defendants. None of the defendants requested a malpractice review panel, and

---

* According to representations contained in the Lab's brief, which were not denied by Richman, plaintiff delivered a normal healthy child, the cancer was surgically removed, and the plaintiff has since been free from cancer. However, she also underwent a complete hysterectomy.

on November 10, 1983, Richman filed a motion for judgment against the same defendants.

On October 19, 1984, the Lab filed a plea of the statute of limitations, in which it asserted that Richman's suit was barred by the two-year statute of limitations applicable in personal injury cases, Code § 8.01-243(A). The Lab contended that it was not a health care provider and, thus, was not subject to the provisions of the Act. As a result, according to the Lab, suit had to be filed against it, if at all, on or before July 14, 1983. The Lab argued that the tolling provision contained in the Act simply did not apply to claims against it. The trial court agreed with the Lab and granted the plea of the statute of limitations.

Thereafter, on October 26, 1984, the Doctors moved for summary judgment. They asserted two grounds. First, they argued that, because of a failure on plaintiff's part to designate an expert witness, the trial court had ruled that no expert would be permitted to testify on plaintiff's behalf. Based on this, the Doctors contended that plaintiff could not establish a case of malpractice against them. Second, they contended that the trial court's ruling that the Lab was not subject to the Doctor's control meant that there was no basis upon which the Doctors could be held liable for the Lab's negligence.

The trial court agreed to reconsider its October 19 statute-of-limitations ruling and to consider the motion for summary judgment. The trial court vacated the October 19, 1984 order in which it had dismissed the Lab on the basis of the statue of limitations and scheduled an evidentiary hearing on November 13, 1984. At the conclusion of that hearing, the trial court reaffirmed its earlier ruling that the suit against the Lab was barred by the statute of limitations and ruled in favor of the Doctors, granting them summary judgment. Richman appeals both rulings. We affirm.

I

■ Richman argues that the Lab was a health care provider under the Act. She contends Code § 8.01-581.1 and related provisions make clear that the General Assembly intended to include clinical laboratories in the definition of health care providers. That contention is not borne out by the statute, which provides in pertinent part as follows:

*"Health care provider"* means a person, corporation, facility or institution *licensed by this Commonwealth* to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist or a nursing home as defined in § 54-900 of the Code of Virginia except those nursing institutions conducted by and for those who rely upon treatment by spiritual means alone through prayer in accordance with a recognized church or religious denomination, *or an officer, employee or agent thereof acting in the course and scope of his employment.*

Code § 8.01-581.1(1) (1977) (emphasis added) (Now, Code § 8.01-581.1(1) (Cum. Supp. 1987)). All the parties agree that the Lab is not licensed by the Commonwealth. Instead, it is inspected by the Commonwealth and licensed by the federal government. Richman submits that the Commonwealth's role in the inspection/licensing scheme is tantamount to licensing. However, the statute states specifically that it applies to certain facilities or institutions "licensed" by the Commonwealth. We take the statute as it is written. Thus, the fact that the Lab is not licensed by the Commonwealth means that the Lab is not a health care provider under the opening language of the definitional provision.

Moreover, clinical laboratories are not included in the list of persons and facilities set forth in the statute. Along with mentioning several individual fields of endeavor, the list also mentions two types of facilities: hospitals and nursing homes. But it does not mention clinical laboratories. There is nothing about the nature of hospitals and nursing homes which suggests that clinical laboratories, though not mentioned, should nevertheless be included in the statute. Rules of liberal construction cannot properly be applied to rewrite a statute in order to alter what it actually says.

Richman advances a second reason that the Lab should be included in the definition of health care provider. Richman submits that even if the Lab is not a health care provider in its own right, it must be considered one because, in analyzing Richman's pap smear, the Lab operated as an "employee or agent" of Dr. Vaughan, who is clearly a health care provider.

In making this second argument, Richman submits that the closing line of the definitional provision, which refers to "an of-

ficer, employee, or agent thereof," refers not simply to the exception concerning nursing institutions using spiritual treatments, but to the list of professionals and facilities set forth in the main portion of the provision. The Lab disputes Richman's interpretation of the statute, arguing instead that the language relied upon by Richman appears in the exception and applies solely to that exception. The trial court did not resolve this issue. In essence, the trial court assumed that the provision should be read as Richman suggests and then proceeded with an evidentiary hearing to determine whether the Lab was, in fact, Dr. Vaughan's employee or agent.

In our opinion, the first step in the analysis should have been to determine whether the language relied on by Richman applied to the exception or to the main portion of the provision. However, that step was not taken, and although the Lab and the Doctors urge us to rule now that the provision limits the "employee or agent" language to the exception, we find it unnecessary to make that ruling in order to decide this case.

■ Assuming without deciding that the "employee or agent" language applies to the list of professionals set forth in the main portion of the statute, we agree with the trial court that, based on the evidence adduced at the hearing, the Lab was not an employee or agent of the Doctors. The trial court correctly used the control test to make this determination. In *Va. Emp. Comm. v. A.I.M. Corp.*, 225 Va. 338, 347, 302 S.E.2d 534, 539-40 (1983), we wrote as follows about the control test: "In any master-servant analysis, be it in the area of tort liability, worker's compensation, or unemployment compensation, the power of control is the determining factor in ascertaining the parties' status. The potential power of control, not the actual exercise of control, is the important element." After considering the evidence in this case, the trial court reached the following conclusion:

I think that the National Health Labs, based on the evidence I have heard, is an independent contractor which controlled its own methods of testing and the manner by which the tests were being conducted. And the doctors, despite this evidence, did not have the right to control either the methods or the manner by which National Health Labs performed those tests.

 We have considered all the evidence adduced by both parties and conclude that there was no genuine issue of material fact as to the relationship between the Lab and the Doctors. Even though we have viewed the evidence in the light most favorable to Richman, it fails to suggest that the Doctors had any right or power to control the method or manner of testing employed by the Lab. Therefore, we are of opinion the trial court properly concluded that the Lab was not an agent or employee of the Doctors and, thus, was not a health care provider. Consequently, the Act did not apply to the Lab, and filing the Notice of Claim under the Act did not toll the statute of limitations as to the claim of negligence against the Lab. We hold, therefore, that the trial court did not err in granting the Lab's plea of the statute of limitations.

## II

We turn now to the question whether the Doctors' summary judgment motion should have been granted. On this point, Richman argues that even if the Lab is not itself a health care provider, and thus escapes liability because of the bar of the statute of limitations, the Doctors are nevertheless vicariously liable for the Lab's negligence.

 Richman contends that in her motion for judgment she alleged that the Lab was the Doctors' agent. She contends further that because the Lab did not deny under oath the allegation of agency, that allegation must be taken as true and that therefore a trier of fact should have been permitted to decide whether the Doctors were vicariously liable. This argument is without merit because assuming that Code § 8.01-279(B) required the Lab to file an affidavit denying agency, Richman did not object to that failure. Thus, pursuant to Rule 1:10 of the Rules of Court, this issue has been waived. This being the only argument upon which Richman rested her claim of vicarious liability against the Doctors, that claim must fail. We hold that the trial court did not err in entering summary judgment in favor of the Doctors.

## III

For all the foregoing reasons, the judgment of the trial court will be affirmed.

*Affirmed.*