# THE CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF VIRGINIA

v.

# PROPERTIES ONE, INC.

Record No. 930110

January 7, 1994

Present: All the Justices

*Paul R. Mack (N. Leslie Saunders, Jr.; Minor, Saunders, Cary & Patterson, on brief), for appellant.*

*Charles W. Hundley (White, Blackburn & Conte, on brief), for appellee.*

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal involving damage to telephone equipment owned by the Chesapeake & Potomac Telephone Company (C&P), we consider two issues: (1) whether a 1904 agreement between C&P's predecessor

in interest, Southern Bell Telephone and Telegraph Company (Southern Bell), and I. Cohen and S. Cohen (collectively, Cohen), predecessors in interest to Properties One, Inc. (Properties), obligated Properties to pay for the damages to C&P's property; and (2) whether the trial court erred in granting Properties' motion to strike C&P's evidence of negligence.

The facts in this case are not in dispute. In 1904, Cohen wanted to extend an existing building in the City of Richmond over a public alley, beneath which ran cables owned by Southern Bell. On May 9, 1904, Cohen entered into a written agreement with Southern Bell in which Cohen stipulated that, if its future use of the alley should interfere with Southern Bell's equipment, Cohen would "make such change, or changes, as may be necessary to enable [Southern Bell] to make the same use of their . . . cables . . . in said alley as they would have had before the execution of this agreement." The agreement further provided that Cohen, its heirs and assigns, would "promptly pay [Southern Bell], its successors and assigns, on demand, any and all costs so incurred" to restore any of Southern Bell's property damaged at "any time in the future" as a result of Cohen's construction and other use of the alley. The agreement was recorded among the City's public land records.

Sometime after the execution of this agreement, the City of Richmond closed the public alley. In 1989, Cohen's successor conveyed the property to Properties. Later that year, Properties hired two independent contractors, E & E Excavating Company, Inc. and Elie Wrecking Company, Inc. (collectively, Elie), to perform demolition and excavation work on the property after a fire. The damage to C&P's cables occurred while Elie was using a front-end loader to excavate a ramp into a basement area.

In September 1991, C&P filed an amended motion for judgment against Properties. C&P alleged, among other things, that under the 1904 agreement, Properties, "by virtue of successor ownership of the referenced property, agreed to indemnify the plaintiff, successor of Southern Bell Telephone and Telegraph Company, for any and all costs incurred" as a result of the damage to C&P's cables, conduits, and other property at the location. C&P also alleged that Properties was liable for the negligence of its independent contractors.

C&P and Properties filed cross motions for summary judgment on the issue of indemnification. The trial court granted Properties' motion for summary judgment, ruling that C&P had failed to prove that the 1904 agreement contained obligations that ran with the land binding Properties as Cohen's successor.

The case proceeded to trial on the negligence count. The evidence showed that the front-end loader was being operated in a safe manner at the time the damage occurred. The parties stipulated, however, that Elie was negligent in damaging C&P's cables. Properties argues, and C&P does not dispute, that if Elie had given the required notice of its excavation plan to "Miss Utility,"[1] C&P would have had the opportunity to warn Elie of the location of its cables and thereby to prevent the damage. The parties also stipulated that Properties, as owner of the site, had no obligation or responsibility itself to contact "Miss Utility."

At the conclusion of all the evidence, Properties renewed its earlier motion to strike. After taking the matter under advisement, the trial court granted the motion and entered judgment in favor of Properties. This appeal followed.

C&P first argues that, pursuant to the 1904 agreement, Southern Bell granted Cohen an easement over Southern Bell's right-of-way, subject to the requirement of indemnification by Cohen for any damage caused to Southern Bell's equipment. Conceding that the agreement does not expressly grant Cohen an easement, C&P argues that, nonetheless, an easement was created by the terms of the agreement, and that Properties now enjoys the easement and is bound by its terms. In response, Properties asserts that the 1904 agreement is nothing more than a contract obligating Cohen to repair any damage occurring to Southern Bell's cables in the course of Cohen's construction work. We agree with Properties.

An easement is "a privilege to use the land of another in a particular manner and for a particular purpose. It creates a burden on the servient tract and requires that the owner of that land refrain from interfering with the privilege conferred for the benefit of the dominant tract." *Brown v. Haley,* 233 Va. 210, 216, 355 S.E.2d 563, 567-68 (1987). Although neither statutory nor common law requires that a grantor of an easement use any particular words of art, the intention to grant an easement must be so manifest on the face of the instrument that no other construction can be placed on it. *Corbett v. Ruben,* 223 Va. 468, 471, 290 S.E.2d 847, 849 (1982). Thus, a provision in an instrument claimed to create an easement must be strictly construed, with any doubt being resolved against the establishment of the easement. *Town of Vinton v. City of Roanoke,* 195 Va. 881, 893, 80 S.E.2d 608, 615 (1954).

---

[1] The Underground Utility Damage Prevention Act, Code §§ 56-265.14 to -265.29 (popularly known as the "Miss Utility" act), requires excavation or demolition work to be preceded by at least 48 hours' advance notification to all entities furnishing or transporting materials or services by means of underground utility lines. *See* Code §§ 56-265.15 and 56-265.17.

■ Applying these principles, we hold that the document before us does not manifest a clear intent to create an easement for the benefit of Cohen. The agreement specifically provides that Southern Bell does not "in any way, waive, yield, grant, or assign, to any individual or corporation, or anyone, any right, claim or use which . . . [Southern Bell] possess[es], own[s], or hold[s], in and to the use of the said alley." Given this unambiguous language disclaiming the grant of any right to Cohen, we conclude that Southern Bell intended only to secure indemnification from Cohen, and not to grant Cohen an easement over Southern Bell's right-of-way.[2]

■ Additional language in the agreement supports this construction. The agreement binds Cohen's heirs, executors, administrators, or assigns only for damages caused by any future use which "the said *parties of the first part* may make of said alley, or any work or building which said *parties of the first part* may construct, or cause to be constructed" (emphasis added). As defined in the agreement, the only "parties of the first part" are "I. Cohen and S. Cohen . . . doing business under the name of Cohen Company." Thus, the agreement imposes liability on Cohen and its successors in interest only for Cohen's acts, not for any acts of its successors in interest. Since the damage at issue did not occur as the result of any act of Cohen, it is not within the scope of this agreement.

C&P next argues that the trial court erred in granting Properties' motion to strike C&P's evidence of negligence. C&P asserts that it presented sufficient evidence of negligence to raise a jury question. In support of its claim, C&P contends that Properties was liable for the negligence of its independent contractor, Elie, because the work it employed Elie to do was of such a character that injury to C&P's property was likely unless precautionary measures were taken. In response, Properties alleges that since the only evidence of negligence was Elie's failure to comply with the "Miss Utility" statute, Properties is not liable under any recognized exception to the general rule that an owner of property will not be held liable for the negligence of its independent contractor. We agree with Properties.

■ We review C&P's assertion in context of the well-established rule of employer liability. In *Kesler v. Allen,* 233 Va. 130, 353 S.E.2d 777 (1987), this Court explained that

---

[2] The record before us does not reveal the precise nature of Southern Bell's interest in the real property being used as an alley, and we express no opinion whether Southern Bell could have created an easement in favor of Cohen by express grant.

[a]s a general rule, an owner who employs an independent contractor is not liable for injuries to third persons caused by the contractor's negligence. Exceptions exist, and the doctrine of *respondeat superior* may become applicable, if the independent contractor's torts arise directly out of his use of a dangerous instrumentality, arise out of work that is inherently dangerous, are wrongful *per se,* are a nuisance, or are such that it would in the natural course of events produce injury unless special precautions were taken.

*Id.* at 134, 353 S.E.2d at 780. As stated above, C&P relies on the exception involving work which, in the natural course of events, will produce injury unless special precautions are taken.

The nature of this exception was addressed in *Norfolk & Western Railway Co. v. Johnson,* 207 Va. 980, 987, 154 S.E.2d 134, 139 (1967), in which this Court emphasized that the exception does not mean that an employer is liable for every activity that will cause injury unless carefully done. If this standard were applied, the exception would encompass nearly all activities. *Id.* Rather, "[t]he distinction to be made is between work which is of such character that, if properly done, no injurious consequences can arise, and work which is of such character that injury . . . is likely unless precautionary measures are adopted." *Id.*

[6] Here, the proper performance of the excavation work included Elie's compliance with the notification procedures set forth in the "Miss Utility" statute. The record before us contains no evidence of any other negligence on the part of Elie. Since there is no dispute that had Elie contacted "Miss Utility" prior to the excavation of the ramp, the damage to C&P's equipment could have been avoided, we conclude that the excavation work here was of such character that, if properly done, no injurious consequences could result. Thus, we hold that C&P failed to produce evidence bringing its claim within the above-stated exception.

In addition, while Elie's failure to comply with the provisions of the "Miss Utility" act is negligence attributable to Elie, this negligence, standing alone, cannot render Properties vicariously liable. *See MacCoy v. Colony House Builders, Inc.,* 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990). To hold otherwise would be to grant C&P the benefit of the "wrongful *per se*" exception to the general rule of employer non-liability. However, as we held in *MacCoy,* the "wrongful *per se*" exception applies only when the work to be performed by an independent contractor is itself unlawful. *Id.* at 70, 387 S.E.2d at 763. Here,

since the contract between Elie and Properties had a lawful objective, Properties cannot be held liable under the "wrongful *per se*" exception. *See id.*

For these reasons, we conclude that the trial court did not err in granting summary judgment in favor of Properties on the issue of indemnification or in ruling that, as a matter of law, C&P failed to present evidence of negligence for which Properties could be held vicariously liable. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*