## CIRCUIT COURT OF THE CITY OF SALEM

Carol B. Shell
and Jeffrey A. Shell

v.

SPH, Inc.

September 9, 1998

Case No. CL97-65

BY JUDGE ROBERT P. DOHERTY, JR.

After presentation of evidence, the parties presented argument and authorities, both oral and written, dealing with the rights of landowners with regard to surface waters. Defendant argues that the cases set forth the duties owed to "adjacent landowners" only, and since Plaintiffs' land was separated from Defendant's by the real estate of another, no duty is owed to Plaintiffs as their land is not adjacent to that of the Defendant. Plaintiffs' position is that the Defendant had a duty not to alter the character of his land in such a manner as to needlessly injure the Plaintiffs and that he violated that duty. The Court finds in favor of the Plaintiffs.

The evidence in this law action is in conflict. The Court having viewed the land which is involved in this case, its topography and characteristics, and having had the opportunity to see and hear the expertise of the witnesses, their powers of observation and recollection, their opportunity for knowing the truth, their potential for bias, their interest in the outcome of the case, and their demeanor on the stand, finds the facts to be as follows.

*Facts*

Plaintiffs' home was situated at the base of a hill and along the banks of Mason's Creek in the City of Salem. Defendant is a landowner and developer who owns land on or near the top of the heavily vegetated hill. There is

another parcel of land between the Plaintiffs' and the Defendant's lands. In late 1994, Defendant approached the City of Salem Engineering Department to obtain the necessary permits to clear trees and grade his land. The City Engineer, who has been qualified as an expert for the purposes of this trial, told Defendant not to disturb the soil on his land until he had obtained an Erosion and Sediment Control Plan. Such a plan would have required sediment traps or tanks, pools, berms, etc., to be in place during grading, to prevent erosion and to protect the lower land owners. In late December, 1994, or early January, 1995, the City Engineer discovered that Defendant was grading his land without having presented a sediment control plan and without having put in place the necessary erosion and sediment safeguards. A "stop work order" was issued until the plan could be prepared and the safeguards put into effect. On or about January 14, 1995, before any of the erosion and sediment safeguards had been put in place, a heavy rain occurred inundating the Plaintiffs' home with mud and water. The City Engineer went to the scene during the bad weather and viewed and walked the entire hillside from the top of the hill where the Defendant's graded land was to the bottom where the Plaintiffs' home was located. He saw all of this while water was still flowing down the hill. He determined that there was visible sediment in the water in and around a drainage ditch running past Plaintiff's house; that mud and water flowed from this ditch directly into the Plaintiffs' house; that the muddy water coming from the graded site on the Defendant's land contained silt; that the muddy and silty water was traced from the Plaintiffs' home to the Defendant's graded site; that Defendant's grading was the only development on the hillside at that time; that water coming from side ditches into the ditch adjoining Plaintiffs' driveway was clear and not laden with sediment; that the ditch and Plaintiffs' adjoining driveway had been filled with silt during the storm; that the silt came from the site where Defendant was grading, causing mud and water to flow away from its normal course and into and around the Plaintiffs' home; that the Defendant had no erosion and sediment control safeguards in effect at the time of the rain; and that had there been such safeguards in effect, they would have made a substantial difference, and only a negligible amount of runoff would have gone onto Plaintiffs' property.

Thereafter, the Defendant obtained an erosion and sediment control study and plan, and by June, 1995, had the various erosion safeguards 85 to 90% complete. The drainage ditch and driveway had been cleared of silt. On June 28, 1995, a second heavy rainstorm occurred, again inundating the Plaintiffs' home with mud and water. The City Engineer again inspected and found muddy water and silt running in the ditch and onto Plaintiffs' property, but not as heavily as it had in January. He testified that he traced mud and silt directly

to the Defendant's property; that the main ditch and those flowing into it were hard packed dirt and gravel, not subject to erosion; that he had traced the color of the mud up the road and ditch directly to the Defendant's grading site; that the vast majority of the mud and silt that came on the Plaintiffs' property came from the location where the Defendant was grading. He opined that if proper erosion controls had been totally in effect on Defendant's site, the mud flows and the flooding of the Plaintiffs' home would not have occurred. Prior to the June flooding, a sewer line had been installed on the hillside approximately 200 yards to the side of Plaintiffs' home. There had been no erosion from that digging when it was viewed by the Defendant's surveyor in April 1995. Trees grew along the sides of the main drainage ditch. There was no dry well around the basement windows at the time of the first flood. Flood waters from Mason's Creek did not reach Plaintiffs' house.

Contrary to the Court's finding of fact, the Defendant claims that he is not liable for the Plaintiffs' injury as the mud came from adjoining lands, not just his; that his retention ponds and sediment retention safeguards were completed by the June 1995 rains; that excavation was occurring on a sewer line on adjoining property at the time of the June storm which contributed to Plaintiffs' claimed loss; that there was no standing mud in Plaintiffs' house the second time; that all of the water from all sources coming down the hill was muddy and contained silt; that the drainage ditch was full of dirt at the time of both rains and that trees grew in the ditch; that there was only one-fourth inch of sediment in the house after the first rain; that the rain gutters on the Plaintiffs' house were plugged, thereby contributing to the flooding; that the level and tilt of the driveway as well as the elevation of the Plaintiffs' home was a major cause of mud and water coming into the Plaintiffs' house.

## Negligence

In this particular case, the damages done to the Plaintiffs' property were directly and proximately caused by the alteration and grading Defendant did to his own real estate. Although the Defendant had a right to change the surface of his own land, thereby diverting, releasing or altering the flow of surface water:

> this right in regard to surface water may not be exercised wantonly, unnecessarily, or carelessly; but is modified by the golden maxim of the law, that one must so use his own property as not to injure the rights of another. It must be reasonable use of the land for its improvement or better enjoyment, and the right must be exercised in

good faith, with no purpose to abridge or interfere with the rights of others, and with such care with respect to the property that may be affected by the use or improvement as not to inflict any injury beyond what is necessary. Where the exercise of the right is thus guarded, although injury may result to the land of another, he is without remedy.

*Norfolk & Western Co. v. Carter*, 91 Va. 587, 592 (1895). Defendant's actions when grading his land were done in a wanton reckless manner with regard to the property and safety of the lower landowners. Defendant was negligent, and his negligence proximately caused damage to the Plaintiffs' real estate.

### Negligence Per Se

In addition to the above, the Court finds that the initial actions by the Defendant in clearing and grading his land without first obtaining the necessary permits or without having obtained and put in effect a sediment and erosion control plan was a clear violation of the City of Salem Sediment and Erosion Control Ordinances, § 30-86, *et seq*. They were enacted pursuant to the state Sediment and Erosion Control Statutes, § 10.1-560, Code of Virginia (1950), as amended *et seq*. These ordinances and statutes were designed for the benefit and protection of the public in general, and of affected landowners in particular. See § 10.1-569 for certain statutory remedies available to a property owner sustaining damage as a result of a violation of these rules. These statutes and ordinances are public safety measures enacted for the health, safety, and welfare of the public. A violation of these city ordinances constitute negligence *per se*, under the facts of this case, as the Plaintiffs were "of that class [of injured persons] for whose benefit or protection the law was enacted ... ." *Williamson v. The Old Brogue, Inc.*, 232 Va. 350, 355-356 (1986). For a discussion of the concept of negligence *per se* for a violation of safety ordinances, see *VEPCO v. Savoy Const. Co.*, 224 Va. 36, 44-45 (1982), and see also *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64, 69 (1990).

### Damages

The Court grants Defendant's motion to exclude evidence of damages that were not provided in answers or supplemental answers to interrogatories. *See* Rule 4:1(e). The Court also grants Defendant's motion to strike as proof of the lost value of Plaintiffs' household goods, the evidence of insurance payments

received. Plaintiffs' motion for attorney's fees is denied. The Court finds the Plaintiffs' proven damages to be as follows:

| | |
|---|---:|
| January house damage | $16,119.12 |
| June house damage | 20,815.31 |
| Motel expenses | 56.67 |
| Meals out | 1,050.00 |
| Lost wages | 1,200.00 |
| Cost to board pets | 200.00 |
| Damage to household goods | 750.00 |
| | $40,191.10 |

Judgment shall be entered in favor of the Plaintiffs against the Defendant in the amount of $40,191.10, plus costs. The judgment rate of interest shall commence upon entry of the final order in this matter.