This case was tried before a jury, which returned a verdict in favor of the plaintiff Shiann Lightsey, as mother and next friend of her minor child Kace Lightsey. The trial court entered a judgment on the jury's verdict, and Parker Building Services Company, Inc., the defendant below, moved for a new trial. The trial court denied the motion. Parker Building appeals. We reverse and remand.
 I.
On May 1, 2001, Kace Lightsey, a five-year-old boy, went with his older sister and their mother, Shiann Lightsey, to a facility in Homewood, Alabama, used by the Alabama Academy of Fast Pitch Softball. Kace's older sister was attending batting practice at the facility, and Kace was playing on the observation deck. At some point while he was playing, Kace crawled under the guardrail of the observation deck and stepped onto the adjacent ceiling that covered a bathroom. The ceiling caved in, and Kace fell to the bathroom floor, hitting his head. As a result of his head injury, Kace suffered a stroke that led to permanent paralysis on the left side of his body.
In March 1999, Equity Investments, Ltd., the owner of the facility, had hired Parker Building to perform some repairs to the facility — patching drywall, putting in new ceiling tile, filling in a concrete trench, and relocating the stairs. The guardrail on the observation deck was not among the repairs Equity Investments asked Parker Building to perform. However, the guardrail was in the area affected by the work performed by Parker Building. At that time, the facility was vacant, and Alabama Academy was not yet a tenant of the facility.
At the time Parker Building was performing repairs to the facility, the City of Homewood had adopted ordinance no. 1778, which required a permit for repair jobs, and ordinance no. 1790, which adopted the 1991 version of the Standard Building Code. The Building Code specified different standards for buildings depending upon their intended use. To be in compliance with Homewood's ordinance no. 1778 and the Building Code, Parker Building should have obtained a permit for the repair job and contacted an inspector for the City of Homewood to complete an inspection after Parker Building had finished *Page 929 
the repairs. Parker Building, however, failed to obtain a permit or to have an inspector inspect the finished work. According to an inspector for the City of Homewood, he would have inspected the affected work area, including the guardrail on the observation deck, and determined if the area complied with the Building Code. An inspector for the City of Homewood testified at trial that the guardrail around the observation deck met the requirements in the Building Code for a building used as a warehouse but failed to meet the requirements for a building used for public assembly; he further testified that, based on the condition of the guardrail, he would have rejected the work if he had known the building would be used for public assembly. Such a rejection would have required Equity Investments or Parker Building to bring the guardrail into compliance with the Building Code for a building used for public assembly.
After Kace's accident, Shiann Lightsey sued Parker Building, Equity Investments, the Alabama Academy of Fast Pitch Softball, and Holly Vance, the owner of the Academy. Equity Investments and the Academy entered into a pro tanto settlement with Lightsey for $6,400,000, and they were dismissed from the case. The record appears to indicate that Vance was dismissed when Equity Investments and Alabama Academy were dismissed.[1] Lightsey proceeded to trial against Parker Building on a negligence claim.[2]
The first trial resulted in a hung jury. On March 1, 2004, the second trial began. At the second trial, the trial court charged the jury on negligence per se as to Parker Building's violation of the provisions of the Building Code relating to the permit fee, permit application, and guardrails.[3] Before and after the trial court's instructions, *Page 930 
Parker Building objected and requested that the trial court charge the jury on prima facie negligence. The trial court denied Parker Building's request.
The jury returned a verdict for Lightsey and against Parker Building and awarded Lightsey $8,000,000. The jury then credited $6,400,000, that Lightsey had received from settling with Equity Investments and the Academy, and rendered a verdict for Lightsey for the balance of $1,600,000. Parker Building moved for a new trial, arguing that it was error for the trial court to charge the jury on negligence per se. The trial court denied the motion.
Parker Building appeals. We reverse the trial court's judgment and remand for further proceedings.
 II.
There is a strong presumption that a trial court's ruling on a motion for a new trial is correct. Alabama Dep't of Transp. v.Land Energy, Ltd., 886 So.2d 787, 792 (Ala. 2004). The trial court's ruling on a motion for new trial "`should not be disturbed on appeal unless the record plainly and palpably shows that the trial court erred and that some legal right has been abused.'" 886 So.2d at 792 (quoting McBride v. Sheppard,624 So.2d 1069, 1070-71 (Ala. 1993)). However, we review a ruling on a question of law de novo. Ex parte Forrester, 914 So.2d 855,858 (Ala. 2005).
 III.
We note that these facts present a case of first impression. This Court has never addressed the issue whether a violation of a standard building code adopted by a city ordinance constitutes negligence per se.
The doctrine of negligence per se or negligence as a matter of law arises *Page 931 
from the premise that the legislature may enact a statute that replaces the common-law standard of the reasonably prudent person with an absolute, required standard of care. Thomas LearningCtr., Inc. v. McGuirk, 766 So.2d 161, 171 (Ala.Civ.App. 1998). When the legislature adopts such a statute, anyone who violates it and causes an injury to a person whom the statute was intended to protect is liable for negligence per se. Id. Proof of a violation of the statute is proof of negligence. Id.
We note, first, that the doctrine of negligence per se is applicable to a violation of an ordinance as well to violation of a statute. See Keeton v. Fayette County, 558 So.2d 884, 887
(Ala. 1989) (stating that violation of a statute or an ordinance may be negligence per se); Simpson v. Glenn, 264 Ala. 519, 521,88 So.2d 326, 327 (1956) (holding that there is no distinction between violation of a statute and violation of a municipal traffic ordinance in applying the doctrine of negligence per se).
However, not every violation of a statute or an ordinance is negligence per se. This Court has stated that four elements are required for violation of a statute to constitute negligence per se: (1) The statute must have been enacted to protect a class of persons, of which the plaintiff is a member; (2) the injury must be of the type contemplated by the statute; (3) the defendant must have violated the statute; and (4) the defendant's statutory violation must have proximately caused the injury. Fox v.Bartholf, 374 So.2d 294, 295 (Ala. 1979).
The first element requires that the statute have been enacted to protect a class of persons. This Court has stated that a class of persons is to be distinguished from the general public.Thomas Learning, 766 So.2d at 171. Parker Building argues that negligence per se is inapplicable in this case because, it argues, the Building Code was adopted for the benefit of the general public and not for the benefit of a class of persons. Lightsey argues that the Building Code was adopted for a class of persons, specifically those within the "built environment." We agree with Parker Building that the purpose of this Building Code is to protect the general public and that negligence per se is therefore inapplicable in this case.
The Building Code applicable in this case states:
 "101.2.1 General. This Code is hereby declared to be remedial, and shall be construed to secure the beneficial interests and purposes thereof — which are public safety, health, and general welfare — through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards attributed to the built environment including alteration, repair, removal, demolition, use and occupancy of buildings, structures, or premises, and by regulating the installation and maintenance of all electrical, gas, mechanical and plumbing systems, which may be referred to as service systems."
The purpose of the Building Code is to protect the public generally; the Building Code does not delineate a specific class of persons it seeks to protect distinguishable from the public.
In determining the purpose of the Building Code, we give the words used in the Building Code their plain, ordinary, and commonly understood meaning and we interpret the language to mean what it says. See Ex parte Gadsden Reg'l Med. Ctr.,904 So.2d 234, 236 (Ala. 2004) (stating that the words in a statute are given their plain, ordinary, and commonly understood meaning, and the statute must be interpreted to mean what it says when plain language is *Page 932 
used). Section 101.2.1 of the Building Code states, first, that the Building Code is to be construed as remedial, and second, that it is intended to secure "public safety, health, and general welfare."
The purposes to be served by the Building Code of "public safety, health, and general welfare" refer to the public generally. See, e.g., Thomas Learning, 766 So.2d at 171
(holding that the language in § 34-8-20, Ala. Code 1975, "`in order to safeguard life, health, and property, and to promote the general public welfare,'" refers to the public generally).
We also construe the phrase "safety to life and property" in section 101.2.1 to refer to the general public, and not to a particular subset of persons who may be in a building at a particular time. First, the "safety to life and property" phrase immediately follows the clause defining the purpose of the Building Code, and it describes the means by which that purpose is to be achieved. Second, nothing in the words "through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards attributed to the built environment" suggests that the words "life and property" refer only to the life and property of a class of persons inside a building. If the purpose of the Building Code was to protect only a subset of persons inside a building or a "built environment," as Lightsey suggests, the Building Code would identify that group. Instead, the Building Code says that it is intended to protect the general welfare "through" — that is, by means of — "structural strength, stability, . . . and safety to life and property. . . ." SeeO'Neill v. Windshire-Copeland Assocs., L.P., 267 Va. 605, 611,595 S.E.2d 281, 284 (2004) (stating that the building code protects no specific class and noting that a person who never enters a building could be injured as the result of a building-code violation).
The purpose of the Building Code is to protect the general public. Because the first element of the doctrine of negligence per se is not met, negligence per se is not applicable to violations of the Building Code in this case.
We acknowledge, as Lightsey argues, that violation of certain rules of the road, § 32-5A-1 et seq., Ala. Code 1975, which govern the standards to protect occupiers of our roads, is considered negligence per se. Consolidated Freightways, Inc. v.Pacheco-Rivera, 524 So.2d 346 (Ala. 1988); Simpson v. Glenn,264 Ala. 519, 88 So.2d 326 (1956). The rules of the road were passed for "the benefit of a particular class of people who use the public streets and highways for travel." Simpson,264 Ala. at 521, 88 So.2d at 328. Thus, unlike the Building Code in this case, the purpose of the rules of the road is to protect a class of persons that is distinguishable from the general public.
Lightsey points out that some jurisdictions have held that a violation of a building code may constitute negligence per se.See Brown v. South Broward Hosp. Dist., 402 So.2d 58, 60
(Fla.Dist.Ct.App. 1981); Real Estate Marketing, Inc. v. Franz,885 S.W.2d 921, 927 (Ky. 1994); Chambers v. City of Helena,310 Mont. 241, 251-52, 49 P.3d 587, 593-94 (2002); Anderson v.Welsh, 86 N.M. 767, 772-73, 527 P.2d 1079, 1084-85 (1974);Federated Mut. Ins. Co. v. Hardin, 67 N.C.App. 487, 488-89,313 S.E.2d 801, 802 (1984); MacCoy v. Colony House Builders, Inc.,239 Va. 64, 69, 387 S.E.2d 760, 763 (1990). See also Vega v.Eastern Courtyard Assocs., 117 Nev. 436, 440 n. 16, 24 P.3d 219,222 n. 16 (2001) (holding that violation of building-code provisions adopted by local ordinance may be negligence per se and citing cases of other jurisdictions holding that negligence *Page 933 
per se may be applicable to building-code violations). However, some of these jurisdictions do not require that the building code protect a class of persons distinguishable from the general public for negligence per se to be applicable. See Anderson,86 N.M. at 772-73, 527 P.2d at 1084-85; O'Neill, 267 Va. at 611,595 S.E.2d at 284; MacCoy, 239 Va. at 69, 387 S.E.2d at 763. Moreover, other jurisdictions have held that negligence per se does not apply to building-code violations. See Grand Union Co.v. Rocker, 454 So.2d 14, 16 (Fla.Dist.Ct.App. 1984); Zimmermanv. Moore, 441 N.E.2d 690, 696 (Ind.Ct.App. 1982); St. Germainev. Pendergast, 411 Mass. 615, 620, 584 N.E.2d 611, 614 (1992);Elliott v. City of New York, 95 N.Y.2d 730, 734,747 N.E.2d 760, 762-63, 724 N.Y.S.2d 397, 399 (2001); Pullman v. Outzen,924 P.2d 416, 418 (Wyo. 1996). Thus, we are not persuaded by the weight of jurisdictions applying the negligence per se theory to building-code violations. Finally, we address here only the particular Building Code applicable in this case. We express no opinion whether the violation of another building code, with a different express purpose, would yield a different result.
 IV.
Parker Building argues that it is entitled to a new trial because, it says, the trial court's instruction to the jury was reversible error. We agree. A party is entitled to have the jury properly instructed. Holly v. Huntsville Hosp., 865 So.2d 1177,1187 (Ala. 2003); George H. Lanier Mem'l Hosp. v. Andrews,809 So.2d 802, 806 (Ala. 2001). We may reverse the trial court's judgment and remand for a new trial based on an incorrect or misleading jury charge. Holly, 865 So.2d at 1187; George H.Lanier Mem'l Hosp., 809 So.2d at 806. When the party has properly preserved an objection to a jury charge, as in this case, we "`"look to the entirety of the [jury] charge to see if there was a reversible error,"'" and we will reverse the trial court's judgment only if there is error and that error is prejudicial. George H. Lanier Mem'l Hosp., 809 So.2d at 806
(quoting King v. W.A. Brown Sons, Inc., 585 So.2d 10, 12
(Ala. 1991)).
The trial court's charge to the jury stated the wrong legal standard. The trial court instructed the jury that if it determined that the ordinances had been violated and that the violation proximately caused Kace's injury, then the jury must find that Parker Building was negligent per se. However, if the trial court had properly instructed the jury on prima facie negligence, then the jury would have been instructed to determine (1) whether the ordinances had been violated and (2) whether that violation constituted negligence by Parker Building. Murray v.Alabama Power Co., 413 So.2d 1109, 1112-13 (Ala. 1982). See,also, Alabama Pattern Jury Instructions: Civil 26.12 (2d ed. 1993). With the proper instruction, the jury could have found that the violations of the Building Code in this case did not constitute negligence. The error, therefore, was prejudicial, and Parker Building is entitled to a new trial.
 V.
We hold that the trial court committed reversible error in giving the jury an instruction on negligence per se. Therefore, we reverse the trial court's judgment and remand this case for further proceedings.
REVERSED AND REMANDED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] The record indicates that the trial court entered a pro ami order on September 10, 2003. That same day, judgments were entered against Equity Investments, the Academy, and Vance.
[2] Lightsey alleged in her complaint claims against Equity Investments, the Academy, Vance, and Parker Building based on theories of: (1) negligence/wantonness; (2) premises liability; and (3) attractive nuisance. In her second and third claims, Lightsey alleged that all the defendants were negligent, wanton, and reckless, and that their negligence, wantonness, and recklessness had caused Kace's injuries. Because the trial court instructed the jury on negligence and damages and Lightsey did not object to the trial court's failure to instruct the jury on wantonness and recklessness, Lightsey appears to have waived her claims based on wantonness and recklessness.
[3] The trial court's negligence per se instruction stated:
 "The Standard Building Code, the 1991 edition and the Homewood City Ordinance 1778, consists of a number of rules, regulations and standards enacted into law by the City of Homewood, regulating work done within the Homewood city limits. The violation of certain of these rules, regulations and standards is negligence as a matter of law. The doctrine of negligence per se or negligence as a matter of law is based upon the principle that when an act is forbidden or required by an expressed [sic] provision of the law that has been adopted and absolute required standard [sic] — the legislature has adopted absolute required standard of care which replaces a common law standard of a reasonably prudent man. Anyone who violates that law with resulting injury to one of those the law was intending to protect is liable regardless of the circumstance. Proof of violation is proof of negligence. Such negligence, however, in order to be actionable on the part of the plaintiff, must proximately cause or proximately contribute to the injury complained of by the plaintiff.
 "I will now read to you certain of those rules, regulations and standards, the violation of which is negligence as a matter of law. The fact that I read these statutes to you is in no way an indication that any of these statutes has been violated or that any such violation proximately caused or proximately contributed to the injury complained of by the plaintiff. It is for you to decide whether or not the statutes have been violated and whether or not any such violation proximately caused or proximately contributed to the injury complained of by the plaintiff, depending upon what you find the facts to be.
 "The first ordinance deals with building permit fees. `Each person, firm or corporation engaged in excavation work, street paving, street repairing, building or constructing any individual building or remodeling, adding to air conditioning, roofing, re-roofing, storage tanks, fire sprinkler systems or repairing any existing building shall submit plans for each such building construction, addition, remodeling, air conditioning, roofing, re-roofing or repair and copies of bona fide signed contracts or other evidence of cost of the above referred to work to the building inspector and shall, before beginning such work, take out and secure a building permit for each building construction, extension, remodeling, air conditioning, roofing, re-roofing or repairing from the City of Homewood.'
 "The next one has to do with permit application. `When required, any owner, authorized agent or contractor who desires to construct, enlarge, alter, repair, remove, demolish or change the occupancy of a building structure or to erect, install, enlarge or alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by the technical codes or to cause any such work to be done shall first make application to the building official and obtain the required permit for the work.'
 "As relates to balconies, porches or galleries. `All porches, balconies, raised floor surfaces or landings located more than 30 inches above the floor or grade below shall have guardrails as specified in 1116.' 1116 as it relates to guardrails reads, `All unenclosed floor and roof openings, open and glazed sides of landing and ramps, balconies or porches which are more than 30 inches above finished ground level or a floor below shall be protected by a guardrail. Guardrails shall form a vertical protective barrier not less than 42 inches high. Open guardrails shall have immediate rails or ornamental pattern such as a six-inch diameter sphere cannot pass through any opening.'" *Page 934